F. I. Switz, APPELLEE, v. G. C. Bruce and Laura
Rawson, APPELLANTS.

·Creditor's Bill: FRAUDULENT CONVEYANCE. B. was indebted
to R. in the sum of $500, loaned money, and interest thereon,
to the amount of $250. He also owed S. $800, and other small
debts. He owned a tract of land worth about $1,000, but
which was mortgaged for $500, and personal property worth
about $800. S. commenced suit against B. and recovered judg-
ment; but a day or two before the commencement of the term
of court, B. conveyed his land to R. in consideration of the
$500, loaned money, and her assuming the mortgage (which she
afterwards paid off), and on the same day B. sold to R. all of
his personal property in consideration of the interest ($250) on
the said loaned money, the payment of $450 in cash and draft,
and the assumption and subsequent payment of debts of B.,
amounting to about $100. R. had knowledge of the claim of
S. but believed that it was unjust, or had been paid; *Held*,
That, as against S., these transactions between B. and R. consti-
tuted but one transaction, and was technically fraudulent.

APPEAL from Thayer county district court. Heard be-
low before MORRIS, J.

*W. O. Hambel*, for appellant.

*O. H. Scott* and *A. R. Scott*, for appellee.

COBB, CH. J.

This was an action in the nature of a creditor's bill,
brought in the district court of Thayer county, by F. I.
Switz, plaintiff, against G. C. Bruce and Laura Rawson,
defendants, for the purpose of setting aside a deed of con-
veyance of certain real estate in said county, from the said
G. C. Bruce to the said Laura Rawson. The plaintiff
recovered a judgment in an action at law against the said
G. C. Bruce in the district court of said Thayer county,
issued an execution thereon, which was returned unsatisfied
for want of goods, chattels, lands, or tenements whereon to

levy, and the said G. C. Bruce, having a short time previous to the term of said court at which said judgment was recovered, conveyed the said land to his co-defendant, Laura Rawson, the plaintiff instituted this suit for the purpose of setting aside the same. In his petition he alleges that said conveyance was without consideration, and made for the purpose of defrauding him out of his said judgment, and of hindering and delaying him in the collection thereof. There was an answer, consisting of a general denial, on the part of both defendants, a trial and decree for the plaintiff, and·the defendants bring the cause to this court on appeal.

It appears from the bill of exceptions that the defendants are brother and sister, and that the female defendant, who is a widow, is the mother-in-law of the plaintiff. The male defendant, who is an unmarried man, has long resided with his sister, and had the general management of her farm together with his own, which was joining hers. It also appears that Bruce became indebted to his sister, Mrs. Rawson, for various sums of money loaned by her to him at sundry times from 1870 to 1874, both inclusive, amounting in the aggregate to five hundred dollars. It appears, also, that Bruce had placed a mortgage on his land to some money lender for five hundred dollars. Bruce conveyed the land to Mrs. Rawson in consideration of this money, which he owed her, and she assuming the above mortgage, which she afterwards paid off. It further appears, that on the same day of the above transaction between the defendants, there was a further one by which Bruce transferred to his sister and co-defendant the whole of his personal property, consisting of live stock, farming implements, etc., of the estimated value of seven or eight hundred dollars. The following is the testimony of the defendant Bruce drawn out on cross-examination as to this part of the transaction, he having been introduced· and examined in chief by the plaintiff.

Q. This personal property, what amount did she pay you for that, and how ?

A. In the first place, after this land transaction, she claimed that there should be interest due her, for that money that I had borrowed, and it seemed right, and we called it that, that would give her $250. And some time in the fall or the latter part of the summer of 1880, I got $200 more of her, and she had a draft from an insurance company, and she gave me that.

Q. Did you borrow that of her?

A. Yes, sir, I owed a note in Lincoln.

Q. Was that drawn upon this property ?

A. Yes, sir.

Q. And $250 on that before ?

A. Yes, sir.

Q. What else did you get for this property ?

A. Three hundred dollars in money.

Q. When.

A. When I left in    *    *    *

Q. What else did she pay ?

A. She paid some old obligations.

Q. State what they were.

A. A machine note.

Q. Was she to pay off these obligations as a part of the purchase price of the property ?

A. Yes, sir. One note to Clemmons and McKinney, and one note to Dawson.

Q. State if you can think of any more.

A. There was a young man by the name of John Sisnor that I owed some $60.

Q. Who was to pay that?

A. She paid him she said.

Q. How much in all did she pay you for that personal property ?

A. Somewhere between seven and eight hundred dollars, I should think. We considered it about equivalent

32

to the amount of the personal property, as I was leaving the country.

Q.   You say that there was $200 in the fall of 1880, and $300 that you got before you went away, in cash, and $250 in interest; now in addition to that, about how much were these claims that she assumed of yours and paid?

A.   These transactions were some time ago, and I never expected it to come up again.

Q.   State to the court whether or not the amount received by you from Mrs. Rawson was about what it was reasonably worth.

A.   That was what we considered.

It is apparent from the above, that while there was an attempt on the part of the defense to establish two separate and distinct transactions between the defendants, the one relating to the land, and the other relating exclusively to the personal property, that there is a failure to do so, sufficiently to purge any part of the entire transaction from such fraud, technical or otherwise, as may be found to attach to any other part of it.   And I think it satisfactorily appears that Mrs. Rawson had sufficient knowledge of the facts upon which the plaintiff had sued her co-defendant, and almost immediately thereafter recovered judgment against him, to make it technically fraudulent on her part, to become the purchaser of all of his personal property, after having taken a conveyance of all his realty, and thereby enable him to leave the state without paying the plaintiff, or leaving any effects behind to respond to his judgment.   I do not attach much weight to the evidence of the admission by Mrs. Rawson, that she took the property of her co-defendant " to beat " the plaintiff.   She had the lawful right to beat him to the extent of getting her own pay ; and had she stopped there, her position would have been unassailable.   But unfortunately for her, she did not, but proceeded to assist her co-defendant to con-

vert all of his property to the exclusion of the plaintiff. And while she doubtless believed that the plaintiff's claim was unjust, or had been paid, yet, the court having rendered judgment in his favor, such belief cannot avail her.

I fail to find any error in the record, and the judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.