CITY OF LINCOLN V. LEVI R. SMITH.

1. **Municipal Corporations:** DEFECTIVE SIDEWALKS. A city is required to use all reasonable care and supervision to keep its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes of travel; and if it fail to do so, it is liable for injuries sustained in consequence of such failure, provided the party injured was exercising reasonable care.

2. ———: ———: NOTICE. To render a municipal corporation liable for injuries caused by a defective sidewalk, it is not necessary that it should have had actual notice of the defect. If a state of facts exist such that ignorance can only arise from a failure to exercise reasonable official care, notice will be presumed.

3. ———: ———. The care and diligence required of a city in keeping its sidewalks in a reasonably safe condition for travel, is not affected or varied by the number of miles of sidewalk therein.

4. ————: ————. The fact that a defect in a sidewalk is concealed by recently fallen snow does not release the city from liability.

5. **The Carlisle Tables** of expectancy of life were properly admitted in evidence.

6. **Instructions** given to a jury must be construed together, and if when considered as a whole they properly state the law, it is sufficient. (*Bartling v. Behrends*, 20 Neb., 211.)

7. **Instructions** that have no evidence to support them should be refused.

8. ————. It is proper to refuse instructions the principles of which have already been fully presented to the jury.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*G. M. Lambertson*, and *H. J. Whitmore*, for plaintiff in error:

The testimony of defendant in error shows that the snow and not the opening caused him to fall; as this was a cause independent of the culpable defects in the sidewalk, the city was not liable. (*Ring v. Cohoes*, 77 N. Y., 88; *Taylor v. Yonkers*, 105 Id., 202; *Searls v. Manhattan R. Co.*, 101 Id., 661; *Moore v. Abbott*, 32 Me., 46; *Moulton v. Sanford*, 51 Id., 127; *Marble v. Worcester*, 4 Gray [Mass.], 395; *Billings v. Worcester*, 102 Mass., 329.) There was a total failure to prove notice of the defect, without which the city would not be liable. (*City of Boulder v. Niles*, 9 Colo., 415; *Joliet v. Gerber*, 21 Ill. App., 622; *Chicago v. Dalle*, 115 Ill., 386; *Turner v. Indianapolis*, 96 Ind., 51; *Aurora v. Bitner*, 100 Id., 396; *Cook v. Anamosa*, 66 Ia., 427; *Chase v. Cleveland*, 44 Ohio St., 505; *Galveston v. Barbour*, 62 Tex., 172; Dillon, Mun. Corp., sec. 1020, *et seq.*) By the second instruction given, the jury was left to infer that the city was bound to keep its sidewalks *absolutely* safe, when as a fact they are only required to be kept *reasonably* safe. (*City of York v. Spellman*, 19 Neb., 357; *City of Lincoln v. Walker*, 18 Id., 250; .

*Same v. Gillilan,* Id., 119; *Same v. Holmes,* 20 Id., 39; *Gosport v. Evans,* 112 Ind., 478; *Emporia v. Schmiddling,* 33 Kan., 485; *City of Boulder v. Niles, Taylor v. Yonkers,* and *Ring v. Cohoes, supra;* Dillon, Mun. Corp., sec. 1019.) By refusing the eleventh instruction asked, the jury was prevented from considering the area and size of the city which was proper, as a defect in a sidewalk would be discovered sooner in a small place than in a large one. (*Reed v. Mayor,* 31 Hun. [N. Y.], 312.)

*Selleck & Lane, contra:*

A hole in the walk was proved to exist, eight inches wide by four feet long, and from five to six inches deep, from which the injury was shown to have resulted, and of which notice, both actual and constructive, was given to the city. It is therefore liable. (*Brennan v. St. Louis,* 2 S. W. Rep. [Mo.], 481; *Bassett v. St. Joseph,* 53 Mo., 290; *Hull v. Kansas City,* 54 Id., 598; *City of Plattsmouth v. Mitchell,* 20 Neb., 228; *Baldwin v. Greenwood's Co.,* 40 Conn., 238; *Ring v. Cohoes,* 77 N. Y., 83, 88; *Taylor v. Yonkers,* 105 Id., 202; Dillon, Mun. Corp., sec. 1017.) The second instruction given states the law correctly, and is the identical language of Dillon, sec. 1017. (*City of Omaha v. Olmstead,* 5 Neb., 449; *City of Lincoln v. Walker,* 18 Id., 249; *City of Plattsmouth v. Mitchell,* 20 Id., 231; *County of Howard v. Legg,* 110 Ind., 472; *Village of Mansfield v. Moore,* 124 Ill., 133; *City of Rock Island v. Cuinely,* 126 Id., 408; *Village of Jefferson v. Chapman,* 127 Id., 438; *Arey v. Newton,* 148 Mass., 498; *Hunt v. New York,* 109 N. Y., 134; *Turner v. Newburgh,* Id., 301; *Goodfellow v. Mayor, etc.,* 100 Id., 18; *Circleville v. Neuding,* 41 Ohio St., 469; *Rusch v. Davenport,* 6 Ia., 447; *Rowell v. Williams,* 29 Id., 213; *James v. Portage,* 5 N. W. Rep. [Wis.], 31; *Estelle v. Lake Crystal,* 6 N. W. Rep. [Minn.], 775; *Sterling v. Merrill,* 17 N. E. Rep. [Ill.], 7; *Delger v. St. Paul,* 14 Fed. Rep., 567; *City of Boulder v. Niles,* 9

Colo., 415; *Bishop v. Schuylkill*, 8 Atl. Rep. [Pa.], 449.)
The sixth instruction fairly presents the question of notice,
and is based upon the evidence. (*City of Plattsmouth v.
Mitchell*, 20 Neb., 228 ; *Chicago v. Dalle*, 115 Ill., 386 ;
*Turner v. Newburgh*, 16 N. E. Rep. [N. Y.], 344; *Waldron v.
St. Paul*, 22 N. W. Rep. [Minn.] ; *Nichols v. Minneapolis*, 23
Id., 868; *Cook v. Anamosa*, 23 N. W. Rep. [Ia.], 907.)
The instructions considered as a whole, as they should be,
fairly and correctly present the case to the jury. (*Campbell
v. Holland*, 22 Neb., 607 ; *Village of Ainsfield v. Moore*,
124 Ill., 133; *Beazan v. Mason City*, 58 Ia., 235.)

NORVAL, J.

This action was brought by the defendant in error
against the city of Lincoln to recover damages for injuries
received by him by reason of a fall upon a sidewalk in
said city, said fall being caused, as he alleges, by the defect-
ive condition of said sidewalk. In his petition he al-
leges:

1. That said city is a municipal corporation and city of
the first class having less than 60,000 inhabitants, and or-
ganized under and by virtue of the laws of the state of
Nebraska.

2. That as such municipal corporation said city had the
care, management, and control of the streets and sidewalks
within said city, and had power and authority and the nec-
essary means, and that it was its duty, among other things,
to keep said streets and sidewalks in good condition and
repair, so that persons could at all times reasonable and
proper, walk over and along the same without danger of
receiving physical injury therefrom.

3. That Sixteenth street, otherwise known as Grand
avenue, is one of the principal streets in said city, and that
the west side of said Sixteenth street, between Q and R
streets, is near the business portion of said city, and at a
place where there was much travel at and a long time prior

to the time when the injury complained of by the plaintiff·
was received.

4. That for a long time prior to the receiving of the in-
jury complained of by the plaintiff, the sidewalk on the
west side of said Sixteenth street, between said Q street
and said R street, and more particularly in front of lot A,
in block 32, of S. W. Little's subdivision in said city, was
defective and in a dangerous and unsafe condition for
travel thereon, by reason of the uneven surface of said side-
walk caused by the removal of several planks from the
same; that the said sidewalk was constructed of planks
laid across wooden supports extending lengthwise of said
sidewalk, to which supports the said planks were fastened
by nails; that the nails of several of the planks in said
sidewalk had been allowed to become and remain loosened;
that the planks were thereby loosened, and some of them
had been removed entirely from said sidewalk, thereby
causing deep and dangerous holes in said sidewalk, were
concealed and rendered extra hazardous and dangerous to
travelers thereon; that the defendant city had actual and
constructive notice of said defect, and in not repairing the
same, or so providing as to prevent or warn persons from
passing over the same, was guilty of gross negligence and
want of care.

5. That on the said 10th day of January, 1887, plaint-
iff was lawfully traveling on foot on said Sixteenth street
and on the sidewalk thereon in the locality above described,
and while so traveling on said sidewalk, and while in the
exercise of ordinary care, and without any fault on his
part and without any warning, he not then seeing or know-
ing of the defect in said sidewalk, or of any defect what-
ever in the same, plaintiff stepped on the edge of the
plank next to the place from which said planks had been
removed, and by reason of the absence of said planks from
their proper place, he fell and was thrown with great force
and violence backwards onto said sidewalk, the small of

his back striking across the edge of a plank of said side-walk, whereby plaintiff was greatly and permanently injured in and about the small of his back, and was otherwise bruised, strained, and internally injured thereby; that by means of said injuries he has been totally disabled for doing manual labor of any kind whatever, and rendered an invalid for life, to his damage in the sum of $10,000.

6. That long prior to the filing of his petition, and within three months of the date of the injury complained of, plaintiff presented his said claim in writing, giving a statement of plaintiff's full name, the time, place, nature and circumstances of the said injury, all in due form as required by law, and filed the same with the clerk of said city; and the same was read at a meeting of the city council held a long time prior to the commencement of this action, and that defendant has wholly failed and neglected to allow said claim or any part thereof.

The answer of the defendant city denies the defect, denies notice, and avers contributory negligence.

The reply is a general denial of all allegations contained in said answer.

On the trial of said cause it was stipulated by the parties:

1. That the defendant city is a municipal corporation as alleged in plaintiff's petition.

2. That Sixteenth street between Q and R streets is one of the regularly laid out and platted streets of said city.

There was a trial to a jury, with a verdict for the plaintiff for the sum of $1,500. The defendant's motion for a new trial was argued, considered, and overruled, and judgment was entered upon the verdict, to which the defendant duly excepted on the record and assigns the following errors:

1. The verdict is not sustained by sufficient evidence.

2. It is contrary to law.

3. Errors of law occurring at the trial.

4. In giving Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 of the instructions asked by plaintiff.

5. In refusing to give defendant's requests, Nos. 2, 3, 5, 10, 11, 12, 13, 14, 15, 16, 18, and 19.

The first error complained of is that the verdict is not sustained by sufficient evidence. It is claimed that the evidence has failed to establish:

1. That plaintiff has suffered a permanent personal injury and that he is damaged thereby.

2. That said injury was caused wholly by a defect in the sidewalk.

3. That said defect was actually known to the city authorities long enough before the accident for them to have repaired it, or that it had existed for a sufficient length of time prior to the accident for the city authorities in the proper exercise of their duties, to have discovered and repaired it.

The evidence shows that the plaintiff was the only person present when the injury was received, and his testimony, describing how it occurred, is uncontradicted. The plaintiff describes the manner in which the injury was received as follows:

" I left home in the morning, I should judge somewhere about 7 o'clock. I had been in the habit when I came down town of taking the street car. When I came out to R street, the R street line, there was no car in sight, so I made up my mind I would walk. I walked down and I had been walking on a good walk. I was not in the habit of coming down town afoot and when I got to the corner of R and Sixteenth streets, I turned off on the west side of Sixteenth street, I should judge—I never measured the distance, but I should judge between ten and fifteen feet on the west side of the street, I was walking along rather briskly, and there had been a light, dry snow, and it was snowing very light at the time and blowing some and drifting, and I was walking along—I am generally pretty sure-footed—I stepped on the edge of a hole in the walk and fell over backwards; my foot slipped into the hole and I fell over backwards.

Q. Had you ever been over that walk before?

A. Never.

Q. You said you fell; how did you fall?

A. *I stepped with my left foot into the hole* and slipped into the hole and fell over backwards, struck the small of my back on the edge of the walk.

    *    *    *    *    *    *    *    *    *

Q. Explain exactly how you fell into the hole.

A. The stringers of the walk were running lengthwise, and the walk was short planks laid crosswise of the stringers. I will describe it to you so you will see: Say I was coming from the side here, I was going south and here was a plank, I stepped on the edge of the plank the same as there, and the plank being gone in front there, which I didn't see, when my heel struck on the edge of the plank here it went into the hole and I fell over backwards, *stepped with my left foot in the hole, and fell partially sideways and struck my back against the out edge of the plank.*

    *    *    *    *    *    *    *    *    *

Q. What part of your back struck on the edge of the walk?

A. The small of my back, across the spine.     *   *   *

Q. Then, if I understand you correctly, you stepped with your heel on the edge of the walk and your foot projected out over the hole?

A. Yes, sir.

Q. How did you fall; I mean in what way, with force or not?

A. Yes, sir, I did.

Q. About what was your weight at that time?

A. One hundred and ninety-eight pounds, between 197 and 198.     *   *   *

Q. State how you felt; you say your back felt bad, what do you mean?

A. It pained me very bad.

Q. Where was it located?

A. Just above my hips, across the small of my back, where I struck the walk.

Q. After sitting up what did you do?

A. I got up on my feet and walked a few steps and sat down on the railing.

Q. Why?

A. My back pained me so bad.

Q. State what you did.·

A. I believe I stated that I sat down on the railing; I turned then and went back and examined the hole in the walk.

Q. Now, when you examined that hole what did you find it to be?

A. One plank gone out of the walk.

·Q. How wide a hole in the walk was that?

A. I should judge it was about eight inches wide, the plank was that was gone out of the walk.

Q. How deep was that hole?

A. Between five and six inches, to the best of my knowledge.

Q. Why did you not see that hole?

A. It was filled with light dry snow.

Q. Was the hole apparent to you before you had stepped into it?

A. Not to me it was not.        *    *    *

Q. Were you giving attention to the walk as you were walking along there?

A. Why yes, sir, I had been walking on a good walk, and I didn't think anything about bad walks, because I was not acquainted with the condition of the walks in the city at that time.

It appears further from the plaintiff's testimony that after the accident he was able to proceed but a short distance before he was compelled by the pain to sit down upon the railing, and that with great pain and difficulty he was able to reach the store, some six or seven blocks

distant, only after an effort continuing for more than an hour; that overcome by this exertion he remained at the store, lying down upon one of the back counters therein, until about four o'clock in the afternoon, when he was assisted to his home and to his bed; that for one day, with the assistance of his wife, he sought to alleviate his sufferings by means of liniments and other ordinary appliances, but by the second morning he had grown so much worse, he sent for Dr. Fuller, who prescribed for him; that he remained under the physician's care and treatment for several months—until Dr. Fuller died—when Doctors Hart were called, and that he remained under their professional care until the time of trial.    At the time of the injury the plaintiff was forty-seven years old, hearty and robust, a carpenter by trade, and had constant employment at $2.50 per day, but that since the accident he has been in constant pain and unable to perform manual labor.    The plaintiff is corroborated as to the nature and extent of the injury by the testimony of his wife, G. O. Boettcher, Paul Seidell, W. F. Learn, and George Smith.    Doctors Hart, Everett, and Haggard each testify that the injury is of a permanent character.    To oppose this testimony the defense called Doctors Beachly, Holyoke, and Crim, who, after making but a single examination, testify that they were unable to find that the plaintiff was injured.    While the evidence on this branch of the case is conflicting, the preponderance is with the plaintiff, and the jury was fully justified in finding that the plaintiff had sustained a permanent injury.

The plaintiff in error contends that the recent fall of snow was a contributing cause of the injury, and that without the snow the accident would not have happened.    The evidence fails to show that the snow caused the plaintiff to slip or that it made the sidewalk slippery at the place the accident occurred.

It will be seen by reference to the testimony of the plaint-

iff that he stepped into a hole in the sidewalk and fell. The defect in the sidewalk was the direct and proximate cause of the plaintiff's falling and receiving the injury.   It is quite possible the plaintiff would not have fallen had the walk been clear of snow, for he would then have doubtless discovered that the board was missing.

The question is not whether the accident would not have occurred if the hole in the walk had not been filled with snow, but whether that walk with the plank missing, with snow as would ordinarily fall upon it at that season of the year, at the place of the injury was unsafe for travelers upon it.   If in that condition, under such circumstances, it was unsafe, then it was defective.   The fact that the defect was concealed by the snow does not release the city from liability.  (*Grossenbach v. City of Milwaukee,* 26 N. W., 182; *Street v. Inhabitants of Holyoke,* 105 Mass., 82; *Hill v. City of Fond du Lac,* 14 N. W., 25; *Harris v. Township of Clinton,* 31 Id., 427; *Dooley v. City of Meriden,* 44 Conn., 117.)

Plaintiff in error contends that the evidence fails to show that the city had knowledge of the defect long enough prior to the accident to have repaired it.

The rule of law adopted by the courts is that it is not necessary that the authorities of a city should have actual notice that a sidewalk is defective in order to make the city liable.   It is sufficient for the plaintiff to prove that the defendant had notice of the defective condition of the sidewalk or establish the existence of facts from which notice would be inferred, or circumstances from which it appears that the defect ought to have been known.  (*City of York v. Spellman,* 19 Neb., 383.)   There is in the bill of exceptions testimony which tends to establish the fact that the defendant city had both actual and constructive notice of the defective condition of the walk.   The accident occurred January 10, 1887, and the defect was known to Street Commissioner Byer some time before.   We quote from his testimony:

City of Lincoln v. Smith.

Q. What official position, if any, did you hold in the city of Lincoln during the year 1886 ?

A. I was street commissioner.

Q. As such street commissioner what were your duties?

A. There was a good deal; I had to take care of the streets, see that they were in condition, as well as I could do it, and the walks and crossings of the city.

Q. Were you at that time familiar with the sidewalks on the corner of Sixteenth and R streets, where this injury is alleged to have occurred?

A. Yes, sir, I was.    *    *    *

Q. Now confine your attention to the point in the walk some fifteen or twenty feet south of the R street line; what was the defect in that walk?

A. There was one plank, two by six, four feet long, that was laid upon a two by four for stringers, that was missing.

Q. Was it in reference to that defect that you gave notice ?

A. Yes, sir.

Q. During what part of the year was this notice given?

A. I think it was along in the fall.

Q. Of what year?

A. The fall of 1887.

It is evident from the rest of the testimony of this witness that it was in 1886 he gave the notice, and not 1887.

Mrs. Smith testified that she was along this walk where the accident occurred, on the 5th of November previous, and at that time some of the planks were missing. She is corroborated by the testimony of Bessie Smith, who testified that she saw holes in the walk there many times between November and the date of the injury.

T. J. Crawford testified :

Q. Have you been familiar with the walk on the west side of Sixteenth and south of R ?

A. Not lately, I have not.

Q. Were you familiar with it up to about the 10th day of January, 1887, from that time previous?

A. Yes, sir; I used to walk that way when I came to town.

Q. At and prior to January 10, 1887, continuing for say two or three months, what was the condition of that walk?

A. There was a plank or two out; that was all.

Q. Now, whereabouts in that walk were those planks gone?

A. There was one plank gone out near the north end of the walk near R street.

The testimony of these witnesses shows that the defect had existed for some time prior to the accident, and that it was apparent. The city was chargeable with notice. (*Waldron v. St. Paul*, 22 N. W. Rep., 4; *Troxel v. City of Vinton*, 41 Id., 580.)

Several errors are assigned on the rulings of the trial court upon the objections to the admission of testimony which we will now notice. This question was propounded to the witness Byer: "What, if anything, did you do officially with reference to that sidewalk?" To this the defendant objected, as incompetent, immaterial, and irrelevant. He also objected to the witness stating what he had notified other people, and for the further reason that they had not fixed the identical place, nor was the witness's attention called to it. The objection was overruled and exception was taken, and the witness answered: "I had notified the agents of the lot, Easterday Bros., in regard to the condition of the walk, to repair it." If this ruling was error it was without prejudice, for the witness afterward testified, without objection, to the giving of the notice.

There was no error committed in permitting the witness Boettcher to testify as to the condition of the walk a week after the injury. It was competent to prove its condition shortly after the accident, as tending to show that the de-

fect existed at the time of the injury. (*City of Chicago v. Dalle,* 5 N. E. Rep., 579.)

Dr. B. F. Hart was asked the following question: "Suppose a man forty-seven years old, weight about 197 or 198 pounds, while walking along and over the sidewalk, should step so far that his foot should slip into a hole in the sidewalk and he should be violently thrown backward, striking his back, the small of his back, across the edge of the walk, causing an injury followed immediately by a severe pain in the back, what, in your opinion, would be the probable effect upon the man from such a fall and such injury?" The record shows that after the question was asked the defendant renewed his *motion* made last above. Overruled; exception. This objection was not specific, and we are unable to determine what the motion was. The question, however, was so framed as to reflect the facts, and the answer elicited was proper and competent.

It was not error to permit the Carlisle Tables to be introduced in evidence. The proper foundation was laid for their introduction. The plaintiff at the time of the injury was in good health, and there being evidence before the jury tending to establish that his injury was of a permanent character, the tables were proper evidence to go before the jury. (*Roose v. Perkins,* 9 Neb., 304.)

The defendant was not prejudiced by the court permitting Mr. Selleck to testify that he had filed the claim of the plaintiff with the city clerk, for the reason that the matters testified to by him were fully alleged in the petition, and not denied in the answer. We are of the opinion that no error was committed in the introduction of testimony of a nature so serious as to require a reversal.

The remaining errors complained of consist in the giving and refusing of certain instructions.

The court at the request of the plaintiff gave the following instructions, to each of which the plaintiff in error excepts:

" First—This is an action brought by the plaintiff Levi R. Smith against the defendant the city of Lincoln, to recover damages from said city for injuries received by the plaintiff, as he alleges, by reason of a fall on or about the 10th day of January, 1887, upon a sidewalk in said city of Lincoln, on Sixteenth street between Q and R streets, in said city. He alleges that said fall and injury were caused by the negligent failure on the part of said defendant to keep the said sidewalk in proper repair and in negligently allowing the accumulation of snow and ice thereon, and says that said sidewalk was defective, unsafe, and dangerous to travelers passing over it in the ordinary mode and that he has been damaged in the sum of $10,000 by defendant's neglect of duty as alleged. Issue is joined upon these allegations by the answer of the defendant and plaintiff's reply thereto.

" Second—Under its charter and under the law it was the duty of the defendant city to keep its sidewalks, including that on the west side of Sixteenth street between Q and R streets, where the alleged injury occurred, in a safe condition for use in the ordinary modes and free from defects and obstructions dangerous to persons passing along the same, with ordinary care, and it is liable to plaintiff for injuries, if you should find from the evidence any were sustained by him, resulting from neglect on the part of defendant to perform that duty, unless you find that plaintiff was guilty of contributory negligence; provided said city had notice of the defective and dangerous condition of said sidewalk or that the said sidewalk had remained in a defective and dangerous condition for such length of time as that said city might, in the exercise of reasonable care, have had notice of the same.

" Third—If you find from the evidence that the injury to the plaintiff complained of was occasioned by the negligence and want of ordinary care of defendant, you are instructed that the burden of proof is then upon the de-

fendant to satisfy you that the negligence and want of ordinary care of the plaintiff contributed thereto, in order to prevent a recovery in this case.

"Fourth—(a) Under ordinary circumstances persons traveling on the streets and sidewalks by the usual modes are required to use ordinary care and diligence, and you should presume that plaintiff exercised such care, unless the evidence shows negligence or fault on his part.

"(b) The plaintiff was not required to anticipate danger nor to be on the lookout for its existence. .

"(c) Ordinary care on the part of the plaintiff is that degree of care and diligence which persons of ordinary prudence would usually use under the circumstances in which the plaintiff was placed at the time the alleged injury was received.

"Fifth—If you find from the evidence that the plaintiff was injured at the time and place and in the manner as alleged in his petition, then the plaintiff is entitled to recover if he was in the exercise of ordinary care and prudence at the time of the injury, and the injury was attributable to the defective condition of the sidewalk, combined with some accidental cause, as the accumulation of snow on said sidewalk; provided said city had notice of the defective condition of said sidewalk, or that the said sidewalk had remained in a defective condition for such length of time as that said city in the exercise of reasonable official care might have had notice of the same.

"Sixth—If you find from the evidence that the sidewalk where the injury complained of by plaintiff is alleged to have occurred was in a defective condition so that the snow which had fallen thereon the night previous to said accident rendered said walk dangerous to foot passengers, and prevented plaintiff from detecting said defect when passing over the same in the ordinary manner of foot travel, and when exercising due care, and that plaintiff had no notice of such defect, then you are instructed that said

defendant city would be liable for the injury, if you find that any occurred to plaintiff, occasioned by such defect and resulting from the same; provided you further find that the city defendant had notice of such defect in its sidewalk or that said defect had existed for such a length of time as that said city and its authorities in the exercise of reasonable care might have had notice of said defect.

"Seventh—It is not necessary that actual notice to the municipal authorities of the defective condition of the sidewalk in question be shown; such notice will be presumed if you find from the evidence that the said sidewalk remained for a considerable length of time in so defective a condition that it was unsafe to travel over with ordinary care.

"Eighth—If you find from the evidence that the street commissioner of the defendant city had actual notice *of the defective condition* of the said sidewalk, then you are instructed that such notice to said street commissioner is notice to the defendant city.

"Ninth—If you find for the plaintiff, then, in ascertaining from the evidence the amount he ought to recover, you should carefully consider the nature, extent, and character of the injury sustained, whether the disability is temporary or permanent, partial or total, and what degree of disability exists; and in considering this you should take into account the age of the plaintiff, and his reasonable expectancy of life, for you should allow not only for damages already past, but for all damages which would naturally and reasonably result from the injury, whether in the past or future. You should find from the evidence how much money plaintiff would reasonably have been able and reasonably expected to earn if he had not been injured, as alleged, and how much he was and is and will be able to earn with his reduced capacity resulting from said injury, and the difference between these two amounts will be the measure of this element of his damages. You should also

City of Lincoln v. Smith.

allow him for any necessary and reasonable expenses incurred for medicines, if any such expenses have been proven. The law fixes no rule by which you are to estimate or fix a price upon bodily pain, suffering, or agony, but leaves it to you to allow plaintiff such reasonble sum for this element of his damages as may be just and reasonable under all the circumstances of the case, not exceeding in all the sum of $10,000.

"Tenth—If you find for the plaintiff, and if you should further find that, by reason of the injuries complained of, the plaintiff has been totally and permanently disabled or prevented from following his usual means of gaining a livelihood, you should allow him, as this element of his damages, such sum as you find from the evidence that he would have been reasonably able and reasonably expected to have earned during the balance of his life, if he had not been injured, as alleged, not exceeding the sum of $10,000 in all."

The following instructions were given at the request of the defendant city:

"First—The jury are instructed that to entitle the plaintiff to recover against the city in this case, the evidence should show to the satisfaction of the jury one or the other of the following facts, namely: That the city had actual prior notice of the defect in the sidewalk which caused his injuries, or that such sidewalk had remained in such defective condition for an unreasonable length of time prior to the accident; and if neither of these facts have been shown by the testimony in this case, the plaintiff cannot recover in this action.

"Fourth—If you find that the sidewalk in question was in a reasonably good and safe condition under all circumstances, you will find for the defendant.

"Sixth—The jury are instructed that before they can find for the plaintiff they must find that the plaintiff has suffered injury, that the injury was caused by a defect in

the sidewalk, that said defect left the sidewalk in an unreasonably dangerous condition, that the plaintiff did not contribute to said injury by any negligence on his part, that the city authorities had actual knowledge of said defect in time to have repaired same before the accident happened, or that the defect had been notorious and continued for a length of time within which the city authorities, in the exercise of reasonable care and diligence, could have known of the same.

"Seventh—The defendant is not required to have the sidewalks so constructed as to secure absolute immunity in using them; nor is it bound to employ the utmost care and exertion to that end. Its duty under the law is only to see that its sidewalks are reasonably safe for persons exercising ordinary care and caution.

"Eighth—You are instructed, as a matter of law, though you should find from the evidence that the injury complained of is the combined result of an accident and a defect in the street or walk, yet if you also find that by the use of ordinary care and prudence on the part of the plaintiff the accident might have been avoided, you must find for the defendant.

"Ninth—The burden of proving negligence rests upon the party alleging it; and where a party charges negligence on the part of another as a cause of action, he must prove the negligence by a preponderance of evidence. And in this case, if the jury find that the weight of evidence is in favor of the defendant, or that it is equally balanced, then the plaintiff cannot recover and the jury should find the issues for the defendant. If you find that the plaintiff is entitled to recover in any amount whatever, then no allowance can be made for medical services, unless the same have been paid or liability incurred therefor, and such sum must be only a fair and reasonable compensation. In this case it does not clearly appear from the evidence the nature and extent of the services rendered, and there is no evidence

that any sum was paid, or any specific amount charged
or agreed to be paid, nor any evidence of the fair and
reasonable value of such services; therefore you are in-
structed to leave out of your verdict any assessment of dam-
ages for medical services.    There being evidence, however,
of money expended by plaintiff for medicines during his
sickness, and should you find from the evidence that he is
entitled to recover on account of the alleged injury, then it
will be your duty to consider said evidence and allow
plaintiff for money actually expended for medicine pur-
chased by him on account of such injury."

The second instruction given on request of the plaintiff
is complained of because it does not contain the word
"reasonably" before the words "safe condition for use."
The law undoubtedly is, that a city is only required to keep
its sidewalks in a reasonably safe condition and can be held
liable only for a failure to exercise ordinary care and
prudence.

The fourth instruction given at the request of the de-
fendant told the jury that if the walk in question was in a
reasonably good and safe condition, to find for the de-
fendant.

By the sixth instruction given on the request of the
defendant the jury was informed that the defect must have
left the sidewalk in an unreasonably dangerous condition
before a verdict could be returned for the plaintiff.

The seventh instruction for the defendant stated "that
the defendant was not required to have its sidewalks so
constructed as to secure absolute immunity in using them;
nor is it bound to employ the utmost care and exertion to
that end.    Its duty under the law is only to see that its
sidewalks are *reasonably safe* for persons exercising ordi-
nary care."    We do not see how the defendant could have
been prejudiced by the omission of the word "reasonably"
from the instruction complained of, on account of its fre-
quent and prominent use in the instructions given at the

request of the city.    All. the instructions must be construed together.    (*Campbell v. Holland*, 22 Neb., 587.)

The fifth, sixth, and seventh instructions given on the request of the plaintiff were based upon the evidence and stated the law correctly.    There was evidence before the jury that the hole in the walk was filled with light, dry snow which concealed the defect.    The missing plank in the walk was the proximate cause of the injury and, under the authorities cited elsewhere in this opinion, the fact that the defect was concealed by snow does not release the city from liability.    These instructions complained of also stated the rule correctly in regard to notice to the city of the defect in the walk.    (*City of Plattsmouth v. Mitchell*, 20 Neb., 228; *Waldron v. St. Paul*, 22 N. W. Rep., 4.)

Error is also assigned because the court gave the eighth instruction asked by the plaintiff.    The first transcript of the record filed in the case in this court omitted from this instruction the words in italics.    These words, however, were in the instruction when given by the trial court to the jury, as shown by the amended record now before us.    The plaintiff in error since the filing of the amended record offers no criticism upon the instruction, and there being no apparent error therein we will give it no further consideration.

The second and third requests of the city were substantially covered by the instructions given to the jury and the court properly refused them.

Error is assigned upon the refusal to give the fifth, fourteenth, fifteenth, sixteenth, and eighteenth requests of the defendant.    We do not think that the court erred in refusing them.    So far as they stated the law correctly, and were based upon the evidence in the case, they were substantially given by being embodied in the instructions given.    Some of these were not predicated upon the testimony and for that reason were properly refused.    (*Fitzgerald v. Morrissey*, 14 Neb., 198.)

Complaint is also made of the refusal of the court to give the following instruction tendered by the city :

"Tenth—You are instructed that if the plaintiff by his own negligence directly contributed to the injury complained of, then he cannot recover.    In reaching a conclusion upon this point it is important to consider the slippery condition of the sidewalk caused by the fall of snow, the fact that the injury occurred in the day time, and whether the defect in the sidewalk could have been observed by ordinary care and caution. ' If the injury was caused by the slippery condition of the sidewalk resulting from a recent fall of snow, or if the plaintiff by the use of ordinary care and prudence could have avoided the alleged defect in the sidewalk, then he cannot recover. ·(Refused ; exception by defendant.)"

This instruction assumes a fact not proven.    There is no evidence in the record that the sidewalk was in a slippery condition caused by the fall of snow and it was rightly refused, for an instruction must be based upon the evidence and not assume facts that have not been proven.

It is urged that the court erred in refusing to give this instruction to the jury :

" Eleventh—If you find from the evidence that the alleged defect in the sidewalk existed at the time of the accident or injury complained of, but that the city had no actual notice of such defect, then, before you find for the plaintiff, it must appear that said defect had been notorious and continued for a length of time within which the city authorities in the exercise of reasonable care and diligence could have known the same.    In deciding upon this question it is proper to consider the area and extent of the city of Lincoln and the number of miles of sidewalk subject to supervision and control of the city, as the existence of the defect in the sidewalks in a small town or village where the area and extent of sidewalks subject to supervision and control is small would naturally be discovered in a much

shorter time by the municipality than would be the case in a large city of greater area and more extensive streets and sidewalks. (Refused; exception by defendant.)"

This request was properly refused, for two reasons: First, there was no evidence of the number of miles of sidewalk in the city; and, second, the care and diligence required of the city to keep its sidewalks in a reasonably safe condition for travel is not affected or varied by the number of miles of walk therein.

In *Lindsay v. City of Des Moines*, 27 N. W. Rep., 283, the court uses this language: "We think the court should not have allowed the defendant to prove that there are over 150 miles of sidewalk in the city of Des Moines and the jury ought not to have been instructed that the 'extent of sidewalk in the city which has to be looked after may be considered' in deciding whether the city officers used proper diligence in removing the snow and ice. It appears to us that the care and diligence required to keep sidewalks in proper condition cannot be affected or varied by the number of miles of walks in a city. If labor is necessary for the purpose, the force should be commensurate with the work to be done. In other words, a city with 40,000 inhabitants, and 150 miles of sidewalk, should be held to the same degree of care in this respect as the smaller towns with less extent of sidewalk."

The plaintiff in error makes no complaint in its brief for the refusal to give its twelfth and thirteenth requests, and we will leave them without comment.

Error is assigned because the court refused to give this instruction:

"Nineteenth—The jury are instructed that to maintain his action the plaintiff must prove that he had, before the filing of his petition, filed a statement giving the full name and the time, place, nature, and circumstances of the injury, or damage complained of, with the city clerk of the city of Lincoln. (Refused; exception by defendant.)"

There was no error committed in denying the request. It was admitted by the pleadings that the plaintiff, before commencing his action, had filed with the city clerk of the city of Lincoln a statement giving the full name and the time, place, nature, and circumstances of the injury, and the damage complained of. This being admitted, the plaintiff was not required to prove the same.

The plaintiff in error has no substantial ground for complaint that the jury was not fairly instructed in its behalf. We have given careful consideration to the questions discussed upon the record, and finding no material error the judgment will be affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.