W. B. GRISWOLD ET AL., APPELLANTS, V. BOB SZWANEK ET AL., APPELLEES.

FILED DECEMBER 5, 1908.  No. 15,388.

1. Fraudulent Conveyances: GOOD FAITH: EQUITY. It is not competent for a creditor to receive in settlement of his debt against an insolvent debtor property materially greater in value than the debt paid thereby; but, if he does so without intending to defraud other creditors, equity will require him to account to other creditors only for the value of the property in excess of the consideration paid therefor.

2. Appeal: VALUE OF PROPERTY: DEMAND. In an action in equity pending on appeal in this court where the result depends upon the value of the property in controversy, this court will remand the case for further inquiry as to value, when it is impossible from the evidence adduced to determine the same.

APPEAL from the district court for Sherman county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*R. J. Nightingale* and *W. J. Fisher,* for appellants.

*Aaron Wall* and *R. P. Starr, contra.*

EPPERSON, C.

Plaintiffs and interveners are judgment creditors of the defendant Szwanek, who was formerly engaged in the mercantile business. The aggregate amount of the judgments, exclusive of costs and interest, is $2,139.35. This action is in the nature of a creditor's bill, wherein it is sought to annul a transfer of a stock of merchandise from Szwanek to the defendant Galczenski, and to subject the remainder of the stock and the proceeds of what had been sold to the payment of the several claims of the creditors. Each plaintiff and intervener, either in aid of attachment or execution, had garnisheed the purchaser, but thereby was unable to accomplish satisfactory results. By this process, however, they obtained equitable liens upon the property transferred to Galczenski if the sale was void, or upon that portion thereof, if any, which is in equity subject to the payment of the general indebtedness owing by Szwanek. *Hargreaves v. Tennis,* 63 Neb. 356. In 1905 the defendant Galczenski became surety for $800 of borrowed money, and later for other sums, aggregating $1,-646.45 on June 18, 1906. The defendant Jasczenski loaned to Szwanek at different times in the latter part of 1905 and early in 1906 various sums of money amounting to $1,545. The defendant Chilewski had become surety for Szwanek on notes for $1,500, and had loaned him $500. On June 18, 1906, Galczenski and Chilewski, and on July 17 Jasczenski took notes from the debtor, representing the amounts of their respective claims, and Szwanek gave to each a chattel mortgage in blanket form upon his stock of goods, ostensibly to secure each of these creditors for the amount they had loaned to or secured for him. But no rights were ever claimed under the mortgages, and particular reference to them is unnecessary. On July 18, 1906, Szwanek sold and delivered to Galczenski all of his

stock of goods, for which Galczenski canceled his own
indebtedness and assumed payment of the indebtedness
owing to or secured by Chilewski and Jasczenski, and in
addition thereto agreed to give Szwanek employment in
the store until the latter could find employment elsewhere.

Plaintiffs contend that the sale is but pretended, and
that it was made to defraud them; that the stock of goods
was of the value of $10,000. Plaintiffs strenuously urge
that they have proved fraud, and that they are entitled to
a judgment against the conspiring defendants. As we
view the case, its disposition depends upon the value of
the stock of goods and Galczenski's intentions in purchas-
ing the same. If the value materially exceeded the con-
sideration paid therefor, then the amount of the defend-
ant Galczenski's liability depends upon his motive in thus
accepting the goods. Plaintiffs made an honest and in-
dustrious effort to prove the value of the goods. They
proved that it was listed by Szwanek for assessment in
1906 at an actual valuation of $10,000, and that it had
invoiced that sum the preceding January. They produced
evidence of several witnesses who had seen and had not
closely inspected the stock, but estimated it at $10,000.
This, of course, was unsatisfactory evidence, but was un-
doubtedly the best plaintiffs could do, not having access
to the stock. On the other hand, Szwanek as a witness for
the defendants testified that, when the transfer was made
to Galczenski, the stock was worth between $6,000 and
$7,000, and on cross-examination he fixed the value at
$6,711, an amount which exceeded by $1,525 the considera-
tion paid by Galczenski. As will be hereafter shown, we
cannot take this testimony as conclusive on the question
of value, yet the defendants cannot reasonably contend in
the face of this evidence that the valuation was less at the
time of the sale than was testified to by Szwanek. It is
therefore established that the value of the goods materi-
ally exceeded the indebtedness for which it was given.
This makes it obviously necessary to ascertain what are
the rights of the parties as they are affected by this fact.

Galczenski testified that prior to the transfer he demanded the money due him; that Szwanek could not pay the same, but offered to convey the stock upon the terms and conditions above stated. It is generally considered and held by this and other courts that a creditor may take over to himself the property of an insolvent debtor in order solely to satisfy his indebtedness, where the value of the property does not exceed the debt. *Elwood v. May Bros.*, 24 Neb. 373; *Nathan v. Sands*, 52 Neb. 660; *Sunday Creek Coal Co. v. Burnham*, 52 Neb. 365; *National Bank of Commerce v. Chapman*, 50 Neb. 484; *Lininger v. Raymond*, 12 Neb. 19; *Beels v. Flynn*, 28 Neb. 575; *Blair State Bank v. Bunn*, 61 Neb. 464. At least the value must not materially or appreciably exceed the debt. This leads us to inquire into the intentions of the purchaser who has received property the value of which exceeds his indebtedness and that assumed by him as a part of the consideration. If it was his intention in taking over to himself the property of his debtor to defraud other creditors, whether the consideration was adequate or inadequate, his purchase would be void, and he should account to the other creditors for the full value of the property. The rule is that a creditor may accept only property sufficient in value to satisfy his debt. If at the time of the transfer he is ignorant of its value, and the property should prove of greater value, or if entirely free from fraudulent intentions, should he be required to surrender the whole of it? Or should he be permitted to retain all of it, or enough only to equal his own claim? Galczenski did not know the value of the stock of goods. Szwanek told him that it was worth between $6,000 and $7,000. This would naturally challenge his attention to the fact that he was receiving value in excess of the consideration. But, as he did not pay the excess to the debtor or otherwise benefit him, this fact alone should be considered insufficient to require a court to condemn the transaction as fraudulent. He was also told that there were other creditors, and it seems made some inquiry into the matter, for he was told

by Szwanek that the latter had yet remaining sufficient outstanding book accounts to satisfy all other indebtedness, and that these accounts, when collected, would be thus applied. Nothing appears to indicate that Galczenski knew or had reason to suppose that Szwanek intended to defraud his other creditors. But the fact remains that Galczenski received more than sufficient to pay his own indebtedness and that assumed by him. This was contrary to the rule. Equity required him to see to it that he take no more property than was sufficient approximately to satisfy his claims and those assumed by him. While equity should walk straight, it must cautiously avoid falling over backward, and, as there was shown no actual intent on the part of Galczenski to defraud the other creditors, equity will not require him to surrender his preference unless required by established rules. Galczenski demanded his money, and Szwanek could not pay, but offered property instead. Galczenski must accept or enforce his claim in law, or permit it to run on indefinitely. Under these circumstances, we cannot say as a matter of justice and equity that he should surrender the fruits of his diligence because it developed that the remaining property was insufficient to pay other creditors. From the cases cited above it is apparent that he should not be permitted to retain all. This court has never decided in similar cases how much the preferred creditor should be required to surrender. In *Henney Buggy Co. v. Ashenfelter*, 60 Neb. 1, a conveyance to a creditor was avoided, but there the creditor had paid the excess to the debtor in cash, and thereby enabled him to delay other creditors, and, moreover, had full knowledge of the debtor's fraudulent intent. Its agents participated in the fraud. They paid in cash a part of the consideration for the property taken, knowing that thereby the other creditors would be delayed, hindered and defrauded. In *Switz v. Bruce*, 16 Neb. 463, the preferred creditor also paid money to the failing debtor and purchased all his property, knowing that the aggrieved creditor was

pressing his claim and that the assailed transfer would prevent the collection thereof. The facts in this case above stated are sufficient to distinguish these two cases.

In *Chamberlain Banking House v. Turner-Frazier Mercantile Co.*, 66 Neb. 48, it appears that a chattel mortgage had been given to secure the preferred creditor, who not only canceled his debt and certain other claims, but paid the debtor $500 in money. The contention of the aggrieved creditor was very similar to the contention made in this case. But the facts are different. There all the property owned by the debtor was conveyed, and the preferred creditor knew that the transaction would result in hindering and delaying other creditors. Creditors who deal for the collection of their debts by taking excessive property, paying the balance to the debtor, are classed with other purchasers. Hence, as to them, two rules have become established: First, the rule followed in *Henney Buggy Co. v. Ashenfelter, supra,* and other cases, which will avoid a transfer of property excessive in value, the difference being paid to the debtor with the creditor's knowledge that such sale will result in defrauding other creditors; second, that a creditor may not take property in payment of his debt which is appreciably greater in value than the amount of the debt. The first rule necessarily avoids the transfer made under the circumstances stated therein. The second rule does not necessarily avoid a transfer of property excessive in value. If the purchaser did not actually participate in the fraud, but in good faith accepted the property of his debtor expecting that all of it would be applied upon his debt, he is not a participant, and should not be deprived of his preference. Although this court has not discussed this question, there are cases wherein we have refused to hold a conveyance wholly void when the value of the property exceeded the amount of the debt. See *Bartlett v. Cheesbrough,* 23 Neb. 767; *Lininger v. Herron,* 18 Neb. 450; *Goldsmith v. Erickson,* 48 Neb. 48. Other courts have held frequently, in substance, that, when a creditor without participating in the fraud-

ulent intent of his debtor takes valuable property in excess of his debt, it will be avoided only to the extent of the excess in a suit by aggrieved creditors. *Stamy v. Laning,* 58 Ia. 662; *Ball v. Phenicie,* 94 Mich. 355; *Short v. Tinsley,* 1 Met. (Ky.) 397, 71 Am. Dec. 482; *Gaar, Scott & Co. v. Hart,* 77 Ia. 597.

The leading American decision, and perhaps the earliest one of particular value in the solution of such problems, is *Boyd & Suydam v. Dunlap,* 1 Johns. Ch. (N. Y.) *478. The transfer there considered was one wherein the grantor preferred his son, who was one of his creditors. The property conveyed exceeded the value of the consideration, and, although it was conceded that in law such a conveyance should be adjudicated either as void or as valid because there was no medial course opened to courts of law, yet in equity it was held otherwise, and the grantee was chargeable with the valuation of the property conveyed in excess of the consideration paid. The reasons therefor were expressed by Chancellor Kent in part as follows: "I do not discover, from a view of the pleadings and proofs, such traces of actual and direct fraud, as to feel myself warranted in directing the conveyance of the real estate to be delivered up and canceled, as absolutely null and void. * * * The only question with me has been, whether the plaintiffs ought to be left to their legal remedy, or whether the case affords sufficient ground for a limited interference, by allowing the deed of the real estate to stand as a security only for such consideration as has been shown by the younger Dunlap. There appears to be very considerable inadequacy of price, even admitting the consideration expressed in the deed, and to allow the deed to stand as security only for the true sum due would be doing justice to the parties, and granting a relief which cannot be afforded at law. A court of law can hold no middle course. The entire claim of each party must rest and be determined at law on the single point of the validity of the deed; but it is an ordinary case in this court that a deed, though not absolutely void,

yet, if obtained under inequitable circumstances, should stand only as a security for the sum really due. A deed, fraudulent in fact, is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity; but it is otherwise with a deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent. * * * Nothing can be more equitable than this mode of dealing with these conveyances, of such indecisive and dubious aspect that they cannot either be entirely suppressed or entirely supported, with satisfaction and safety." Other courts have reached the same results, somewhat arbitrarily perhaps, by imputing to the parties an intention that the conveyance was intended as security only. *Mitchell v. McKibbon,* 8 N. B. R. 548; *Van Wyck v. Baker,* 16 Hun (N. Y.), 168.

This court has frequently declared void contracts of sale, but only where it was made to appear that the vendee shared the vendor's fraudulent intentions. But, unless it is made plain that the vendee acted with fraudulent intent, such contracts should not be set aside. But, where the case is in doubt, considerable danger of doing one party a great injustice exists, if the strict rules of law are followed, which require that the contract be wholly sustained or wholly defeated. But in cases such as this, where actual fraud of the vendee is not proved, but where he accepts more property than is permitted, it seems necessary to take a medial course. Courts of equity, aided by strenuous efforts of outraged creditors, are frequently unable to detect actual fraud, although the case may savor strongly of its odium, and frequently equitable relief is denied because the court adheres too closely to hard and fast rules. But in such cases, where the vendee has proceeded irregularly, but without fraudulent intent, the transaction is at most only constructively fraudulent. Such is the status of this case, and we consider it necessary to adopt the rule in *Boyd & Suydam v. Dunlap, supra,* which has been followed by many courts.

We are unable to determine the amount of the excess in value of the goods transferred. As above stated it appears that it was at least $1,525. Therefore the plaintiffs and interveners were entitled to judgments against Galczenski for that amount to be distributed among them in the order of their liens. This, however, will be insufficient to pay all their debts, and they contend that they are entitled to more. But because the evidence as to value is unsatisfactory, we are unable to say that they are entitled to more; but can say that because of errors they are entitled to a new trial that this question may be further inquired into. It would seem that defendant Galczenski, being in possession of the goods, would have been able to have given adequate information of the value. He did not do this, probably because the trial court proceeded upon the theory that the adequacy of the consideration was immaterial. Notwithstanding the trial court's theory, a few facts bearing upon the value were developed in addition to those referred to above. At the time of the trial April 9, 1907, the stock then on hand amounted to $5,000 or more. Galczenski had sold goods amounting to $14,- 259.18. New goods had been added to the stock, but we are left entirely in the dark as to the value thereof. Under these circumstances, it is absolutely impossible to determine what the value of the property was at the time it was transferred. Galczenski should be permitted or required to furnish this necessary evidence. If he fails in this regard, only one course is open, and that is to charge him with the full amount he received from the business from the time he took charge of it, and declare it subject to the liens of the plaintiffs and interveners, or render personal judgment against him therefor.

We recommend that the judgment of the district court be reversed and this cause remanded for further proceedings.

DUFFIE and GOOD, CC., concur.

52

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and this cause remanded for further proceedings.

REVERSED.