GEORGE N. BEELS v. JOHN FLYNN.

[FILED JANUARY 28, 1890.]

</div>

1. **Fraudulent Conveyances:** PURCHASER: WHEN CHARGED WITH NOTICE. A purchaser of an entire stock of goods—all the property of the debtor—cannot close his eyes to the circumstances under which he purchases the stock and the probable effect the means of payment (in this case mostly a note of the purchaser) will have upon creditors of the seller in hindering, delaying, or defrauding them of the payment of their claims.

2. ———: ———. *Held*, That the plaintiff in error was not a *bona fide* purchaser, and not entitled to protection.

3. ———: STATUTE CONSTRUED. The words "as against the person so hindered, delayed, or defrauded," in section 17, chap. 32, Comp. St., limit the right of action to the parties named—in other words, exclude mere volunteers who have no interest in the result of the suit, but do not affect any one who is hindered, delayed, or defrauded of his debt by a fraudulent transfer.

4. **Answer,** liberally construed, *held*, sufficient after verdict.

ERROR to the district court for Madison county. Tried below before POWERS, J.

*Wigton & Whitham,* for plaintiff in error:

Under sec. 17, ch. 32, Comp. Stats., a fraudulent conveyance is void only "as against the person so hindered, delayed, or defrauded." There must be both an intent to defraud and an actual hindrance of creditors. (*Aultman v. Heiney,* 59 Ia., 654; *Baldwin v. O'Laughlin,* 28 Minn., 68; *Rice v. Perry,* 61 Me., 145; *Sell v. Bailey,* 119 Ind., 51; *Knight v. Glasscock,* 51 Ark., 390; *Mason v. Pierron,* 63 Wis., 239; Wait, Fraud. Conv., sec. 143.)

*Holmes & Hays, contra.*

MAXWELL, J.

This action was brought by the plaintiff against the defendant in the district court of Madison county to recover a judgment for the conversion of "The entire stock of harness, whips, saddles, saddlery hardware, collars and leather, the safe, show case, and stove which were in the harness shop in Beels' block, in the city of Norfolk, Nebraska, at the time hereinafter mentioned, formerly occupied by H. L. Spaulding, together with all the tools and fixtures belonging to said shop, which goods and chattels were of the value of $1,163.26.

"On the 28th day of April, 1888, the defendant obtained possession of the said goods and chattels, and unlawfully and wrongfully converted the same to his own use, to the damage of the plaintiff in the sum of $1,163.26."

Flynn answered the petition, and alleged that he was the sheriff of Madison county, and levied upon the property in question "by virtue of an order of sale issued by the county court of Madison county, upon a judgment rendered in said court in favor of Marks Bros. Saddlery Co. and against H. L. Spaulding. Marks Bros. Saddlery Co. intervened and answered:

"That on the 28th day of April, 1881, your petitioner

commenced its action in the county court against L. Spauld-
ing, on an account for goods sold and delivered, and caused
an attachment to be issued in said action, levied upon a cer-
tain stock of harness, saddlery, etc., being the property de-
scribed in plaintiff's petition ; that afterwards, to-wit, on or
about the 27th day of June, 1888, the defendant, as sheriff
of said county, sold the said property by virtue of an order
of sale issued by the county court aforesaid, on a judgment
rendered in said action ; that the said defendant has no in-
terest in said property, or the proceeds of the sale thereof—
your petitioner is the real party in interest; that the said
property so levied upon and sold by the defendant was in
the possession of the said H. L. Spaulding, and the prop-
erty of said Spaulding on the day preceding the levy of
said attachment, and until a late hour of the night preced-
ing the said levy; that it constituted the entire stock in
trade of said Spaulding, who had been for several years
before, and until said time, engaged in the harness and
saddlery business at Norfolk, Neb.; that said Spaulding was
largely indebted to your petitioner, and other dealers in
the same line of goods, and the said Spaulding was, and
had been for several years, carrying on his said business in
a building belonging to and rented of the plaintiff, who
was fully advised of his financial condition ; that the said
Spaulding pretended to sell said stock of goods to plaintiff,
but such sale was made with the intent to defraud your
petitioner, and other creditors of said Spaulding, and no
sufficient consideration was paid for the same, and the pur-
chase thereof, if made at all by plaintiff, was so made with
full knowledge on the part of said plaintiff of such fraud-
ulent intent."

On the trial of the cause the jury returned a verdict for
the defendant, and a motion for a new trial having been
overruled, judgment was entered on the verdict.

A large number of errors are assigned in the petition in
error which need not be noticed, as it is apparent from the

testimony that the verdict and judgment conform to the proof.

The testimony tends to show that in April, 1888, one H. L. Spaulding was conducting a harness shop in Beels's block, in the city of Norfolk, Nebraska, and that he had been engaged in that business for about four years; that at that time he made a verbal agreement with one Hopkins to purchase his stock at ten per cent below the wholesale price; that in pursuance of this agreement an invoice of the stock was taken, which amounted to $1,205 ; that Hopkins thereupon refused to take the stock at the invoice figures, but offered $950 for the stock, which Spaulding refused. Spaulding at this time testifies that he was owing for stock from $900 to $1,100, some of the claims for which were due, and there is testimony tending to show that he had asked an extension of time for the payment of some of these claims.

Some of the agents of the creditors were present in Norfolk on the day the alleged sale to Beels took place, and others were expected and were there the next day.

Mr. Beels and Spaulding were at Madison on an excursion, and while there, late at night, the following bill of sale was prepared and signed:

"This article witnesseth that I, H. L. Spaulding, for and in consideration of $1,000, in hand paid, the receipt whereof is hereby acknowledged, do hereby sell and convey unto Geo. W. Beels the following described property, to-wit:

"All my stock of harness, whips, saddles, saddlery hardware, collars, leather, safes, show-cases, and stove now in my harness shop in Beels's block, in the city of Norfolk, Nebraska, together with all my tools and other fixtures belonging to said shop, except my small bench, tools, such as awls, round knives, etc., such as belong to an individual set: for a specific description of said stock, tools, etc., reference is hereby made to a certain bill invoice of same

made in the presence of H. L. Spaulding, Burt Shearer, D. A. Hopkins, and Mr. Cooley, on April 25th, 1888, which bill is now in said safe, and is made a part hereof.

"And I also in consideration of the further sum of $300, I hereby sell and convey unto said Geo. W. Beels all my accounts as now appears on my books, together with books containing same, amounting to about $500, and not less than $400.

"Possession of said shop and said stock is hereby transferred to said Geo. W. Beels.

"Witness my hand the 20th day of April, 1888.

                                      "H. L. SPAULDING.

"Witnesses:

   "W. H. LAW.
   "W. H. PECK."

This was all the property possessed by Mr. Spaulding except some money and notes derived from the sale of his homestead, and which seem to have been reserved for the purchase of another homestead.   It is claimed on behalf of the plaintiffs in error that the testimony fails to show that this was all of Spaulding's property, but this is a mistake, as Spaulding's own testimony shows such to be the case.   The book accounts, if placed at $400, would make $1,605—which Beels received from Spaulding.   For this, according to his own testimony, he satisfied a debt of $100 due to himself.   He assumed a note of $285 at one of the banks in Norfolk, and gave his own note to Spaulding for about $900.

On the day after the sale he was informed by an attorney of one or more of the creditors that the sale was regarded as fraudulent as to creditors, but if the creditors could reach the amount due upon the note they would seek relief in that way.

After this, but apparently on the same day, Beels traded land to Spaulding for the note.

Both Beels and Spaulding testify that this trade for land was not contemplated when the bill of sale was executed.

It evidently was done, however, to prevent Beels being garnished and the creditors paid. A creditor may collect his claim from a failing debtor and not be chargeable with aiding him to defraud his creditors, and such creditor may accept payment in goods, so that the goods are purchased at a fair price and no more taken than will pay the debt. The prohibition of the statute applies to transfers made by a debtor and not to a creditor.

But when a debtor has incurred debts on the strength of his being the owner of certain property, his creditors have an equitable claim thereon, and may insist that he use his property honestly and fairly and without any intention of hindering and delaying them in the collection of their claims (*Seymour v. Wilson*, 19 N. Y., 417), and if the debtor dispose of his property in such a way as to violate the trust reposed in him at the creation of the debt, by disposing of his property in such a manner as to hinder and delay or defraud creditors, and the person purchasing has notice of such intent, he will not be protected. (*Weed v. Pierce*, 9 Cow., 722; *Smith v. Sands*, 17 Neb., 498.)

In the latter case it is said: "A debtor, while the owner of his property, sustains two distinct relations in regard to it, viz., as owner and as *quasi*-trustee for his creditors. If his creditors have taken no lien upon the property as security, they may be said to have given him credit upon the implied agreement that his property shall, if necessary, be applied to the payment of his debts, and such creditors have an equitable lien upon the property for that purpose. (Bump. on Fraudulent Conv., 13, 14; *Eppes v. Randolph*, 2 Call., 125; *Seymour v. Wilson*, 19 N. Y., 417.)

"The law requires the debtor to act in good faith with his creditors and apply his property, not exempt, if need be, to the payment of his debts. If he attempts to evade this duty, and for the purpose of hindering or defrauding

his creditors by transferring his property to another without consideration, or with knowledge on the part of grantee of the fraudulent intent, such grantee will take the property charged with the trust, and if he converts the property into money he will be liable for its value, less any valid liens subsisting against it."

A purchaser cannot close his eyes to the circumstances under which a debtor sells his goods—his entire stock. If he buys at a considerable discount, and the effect of the proposed means of payment must be to hinder and delay if not defraud creditors of the seller, the purchaser will buy at his peril.

Good faith, honesty, and fair dealing require that the debtor's property be applied to the payment of his debts, and it is the duty of the courts to frown upon all attempts of a debtor and purchaser of his goods to evade that duty.

It is evident that Mr. Beels well knew that the effect of his alleged purchase would be to hinder and delay if not defraud the creditors of Spaulding, and that he is not a *bona fide* purchaser. It is claimed by the plaintiff in error that the language of sec. 17, chap. 32, Comp. St., that " Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay, or defraud creditors or persons of their lawful rights, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, or decree or judgment suffered, with the like intent as against the person so hindered, delayed, or defrauded, shall be void," is restrictive, and hence the words at the close of the section, " against the person so hindered, delayed, or defrauded," limit the right of recovery to one that is hindered, delayed, or defrauded by the acts complained of. It is claimed that this provision is peculiar to this state.

An examination of the statutes of the several states, however, shows that a provision of similar import is found in many if not most of the states, and is also found in the second section of 13 Eliz., chap. 5, from which, in substance, our statute appears to have been taken.

The evident intention was to limit the right of recovery to those who had suffered by the act complained of, while as between the parties to it the sale would not be disturbed. In other words, a mere volunteer who has no interest in the result of the suit cannot complain even if the transfer was well known to him to be fraudulent, because he sustains no injury by such fraud.

When, however, as in the case at bar, the creditors who have been defrauded complain, their right to contest the sale is unquestionable.

Some objection is made to the answer that it does not charge fraud on the part of Spaulding and Beels.

In our view, however, the answer, liberally construed, after a verdict does state sufficient to entitle the creditors to relief.

It is unnecessary to notice the instructions.

The judgment is clearly right and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.