HON. SAMUEL MAXWELL, CHIEF JUSTICE.*
HON. T. L. NORVAL, CHIEF JUSTICE.

HON. A. M. POST,
HON. T. O. C. HARRISON, } JUDGES.

HON. ROBERT RYAN,
HON. JOHN M. RAGAN, } COMMISSIONERS.
HON. FRANK IRVINE,

GEORGE KARLL, CONSTABLE, v. ROBERT E. KUHN.

FILED JANUARY 2, 1894.   No. 5654.

Fraudulent Conveyances: RIGHTS OF CREDITORS: NOTICE TO
PURCHASERS: EVIDENCE. In an action which involved the good
faith of the purchaser of an entire stock of goods of the value
of $4,500, which were paid for by the transfer of eight lots in an
addition to Sioux City, of the alleged value of $2,400, to the
seller's wife, and the remainder in notes of third parties, having
some time to run, held, that the proof and instructions were too
much restricted to submit the matter in full to the consideration
of the jury.

ERROR from the district court of Douglas county.   Tried
below before IRVINE, J.

* Term expired January 3, 1894.

(539)

*McCabe, Wood & Elmer*, for plaintiff in error, cited: *Kaine v. Weigley*, 22 Pa. St., 179; *Kersenbrock v. Martin*, 12 Neb., 374; *Fitzgerald v. Meyer*, 25 Neb., 77; *Wasson v. Palmer*, 13 Neb., 376; *Beels v. Flynn*, 28 Neb., 575; *Judson v. Courier Co.*, 15 Fed. Rep., 541; *Reed v. Maben*, 21 Neb., 695.

*Davis, Gantt & Briggs, contra*, cited: *Thornburgh v. Hand*, 7 Cal., 554; *Noble v. Holmes*, 5 Hill [N. Y.], 194; *Van Etten v. Hurst*, 6 Hill [N. Y.], 311; *Mathews v. Densmore*, 43 Mich., 461; *Williams v. Eikenberry*, 25 Neb., 721; *Schars v. Barnd*, 27 Neb., 94; *Bartlett v. Cheesebrough*, 32 Neb., 340.

MAXWELL, C. J.

On the 29th day of January, 1890, plaintiff in error, as constable, seized the property in controversy as that of W. C. Ryan, defendant in attachment, at the suits of Darrow & Logan, Schneider & Loomis, and J. T. Robinson Notion Company, under three orders of attachment; the demands of these plaintiffs, subsequently reduced to judgment, being $99.25, $415.92, and $235.80, respectively. The day following the levy the defendant in error seized the property under an order of replevin issued from the district court of Douglas county, averring ownership by purchase from W. C. Ryan prior to the issuance of the attachments. The plaintiff in error justified under his orders of attachment and alleged that the purchase by R. E. Kuhn from W. C. Ryan was in fraud of the latter's creditors, and upon this issue the case was tried and a verdict rendered in favor of Kuhn for the sum of $43.70. This sum the court required the plaintiff to remit, which was done, and judgment was entered in favor of Kuhn for five cents damages.

The testimony shows that in 1883 Kuhn began the banking business in Emerson, about eighty miles from Omaha,

removing to South Omaha in 1889.   From 1884 or 1885 he was acquainted with W. C. Ryan, who, until 1887 or 1888 was a farmer living five or six miles from Emerson. In the latter part of 1887, or early part of 1888, Ryan moved to Emerson, and, in partnership with one Clark, opened a country store, Kuhn being banker of the firm. In the fall of 1888 Clark retired.   Ryan continued the business, his father and one Berben indorsing his paper for goods bought and unpaid for to the amount of $3,000.   In January, 1890, Ryan was insolvent, but continued to do business and purchased the goods in question on credit. The debt of Darrow & Logan was about due; that of J. T. Robinson Notion Company was overdue, while the Schneider & Loomis claim had not yet matured, January 27, 1890.   Ryan owed, on January 27, 1890, for goods bought, $2,400, on paper indorsed by his father and another in October, 1888, $3,000; mortgage indebtedness, $3,200.

In 1889 Kuhn started, in South Omaha, a grocery store. A few days prior to January 27, 1890, Ryan approached him with a proposition to sell his stock, and an inventory was made without closing business, and that seems to have been known only to the parties engaged.   This inventory could not be produced at the trial.   Ryan continued in possession, selling goods as usual, until the close of business on the 27th, when he and Kuhn commenced packing, working all night, and for twenty-four consecutive hours, when the goods were shipped to South Omaha.   Kuhn was to pay the cost price, less freight and a trifling reduction for damaged goods, for a stock adapted to a country trade, consisting of clothing, boots and shoes, hats and caps, dry goods, notions, hardware, groceries, etc.   The amount of the stock is claimed to have been $4,500.   The only reason assigned for the sale was the intention of Ryan to remove to the farm. The consideration paid was eight lots in Sioux City, Iowa, at $300 each, aggregating $2,400; a note executed by one Spiker to Kuhn, not due for fourteen months, $1,080; a

similar note executed by one Rhoady, $680, without security, and a note of one Rhoady not due for two or three years ; a note executed by one Beringhoff, $267.  About $75 interest had accumulated on these notes.  On the 27th Kuhn and Ryan went to Sioux City, where deeds to Mrs. Ryan were executed for the lots there, but were not delivered until the bill of sale for the stock was executed that evening.  They did not start from Sioux City until 4 P. M., but between 7 and 8 P. M. of that day a messenger filed with the recording officer at Ponca, eighteen miles distant, a bill of sale of the stock, and a deed to Ryan's father for a half section of land.  This messenger was Kuhn's, who was then in possession of the stock.

The defendants offered in testimony a duly certified copy of a warranty deed executed by Kuhn and wife to Mrs. M. A. Ryan on the 11th day of January, 1890, and filed for record on the 27th day of January, 1890, at 7 o'clock P. M.

It certainly was relevant and material to inquire into the dealings between Kuhn and Ryan, and Ryan's wife, at or near the time when the testimony disclosed that Ryan was making a disposition of his property, and manifestly making a disposition of his property to his wife.  The court, however, excluded this upon the theory that it had been executed, as appeared upon the face of it, some sixteen days prior to the conveyance to Kuhn.  In this the court clearly erred.  In a transaction of this kind all the facts relating to the transfer of the property, the consideration therefor and by whom paid, the manner of payment and to whom the transfer was made, may be proved to enable the jury to determine the true nature of the transaction.

In view of the many assignments of error it would consume too much space to particularize the specific errors. The court seems to have restricted the examination to too narrow limits, and again in the instructions to have restricted the inquiry as to the good faith of the transaction. The undisputed testimony shows that Kuhn had sufficient

notice that the goods were not paid for to put him upon inquiry, yet he aided in putting the property of Ryan in a position, the inevitable effect of which was, to hinder and delay, if not defraud creditors of Ryan. This he cannot do and be treated as a *bona fide* purchaser.

In *Beels v. Flynn*, 28 Neb., 575, it was held: "A purchaser of an entire stock of goods, all the property of the debtor, cannot close his eyes to the circumstances under which he purchases the stock and the probable effect the means of payment (in this case mostly a note of the purchaser) will have upon creditors of the seller in hindering, delaying, or defrauding them of the payment of their claims." What is said in that case is applicable in this, and all the facts and circumstances should be submitted to the jury, which they were not, either by the proof or the instructions. The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.