NEBRASKA MOLINE PLOW COMPANY V. O. C. KLINGMAN ET AL.

FILED APRIL 21, 1896.    No. 6543.

1. **Attachment: RULING ON MOTION TO DISSOLVE: REVIEW.** Where a motion to discharge an attachment on the ground that the facts stated in the affidavit are untrue is heard on conflicting evidence the decision of the trial court on the motion will not be disturbed unless it is clearly against the weight of the evidence. *Whipple v. Hill*, 36 Neb., 720, followed.

2. **Fraudulent Conveyances: EVIDENCE: PARTNERSHIP.** The fact that a copartnership largely indebted sells most of its property and its business to one of small means in consideration of a small amount of cash and the purchaser's promissory notes is a circumstance tending to show that the transaction was fraudulent, but not conclusive nor alone sufficient evidence that it was fraudulent.

ERROR from the district court of Webster county. Tried below before BEALL, J.

*Switzler & McIntosh*, for plaintiff in error:

Where an insolvent mercantile firm sells all its available property to one who is execution proof, and takes in

payment his unsecured, long-time notes, it is a fraud on other creditors. (*Pilling v. Otis,* 13 Wis., 533; *Knowlton v. Hawes,* 10 Neb., 534; *Beels v. Flynn,* 28 Neb., 575; *Seymour v. Wilson,* 19 N. Y., 417; *Smith v. Sands,* 17 Neb., 498.)

*M. A. Hartigan, contra.*

RAGAN, C.

In the district court of Webster county the Nebraska Moline Plow Company sued O. C. Klingman and A. D. McNear, a partnership doing business as Klingman & Co., at law to recover $1,918 which the plow company alleged was owing to it from Klingman & Co. At the time of bringing this suit the plow company caused an attachment to be issued and levied upon a stock of goods, consisting of buggies, wagons, and farming implements, which the plow company alleged was the property of Klingman & Co. At the time the attachment was issued and the property seized $275 only of the debt sued for, and for which the property was attached, was due. The district court, on motion of Klingman & Co., discharged this attachment, and to reverse that order the plow company prosecutes here a petition in error.

The plow company alleged in the affidavit made to procure the attachment that "said defendants have sold, conveyed, and otherwise disposed of their property, with a fraudulent intent to cheat and defraud their creditors and to hinder and delay them in the collection of their debts." The affidavit alleged that Klingman & Co. had done three things which amounted to a fraudulent disposition of their property with intent to defraud and delay their creditors: (1) That Klingman & Co. had executed a chattel mortgage for $900 on a portion of their stock of goods to a brother of one of the partners; (2) that Klingman & Co. had turned over to a bank in Webster county bills receivable belonging to them of the par value of $4,100. An examination of the evidence preserved in the bill of exceptions shows that these two averments of the

affidavit are entirely without foundation. Klingman &
Co. at no time, so far as the record shows, ever mortgaged
any of their property to a brother of one of the firm, and
the disposition made of the bills receivable of Klingman
& Co. to the bank in Webster county was made to secure
debts owing by Klingman & Co. to the bank. The third
act, and the one relied on in the argument here, done by
Klingman & Co. which the affidavit alleges was done for
the fraudulent purpose of defrauding and delaying their
creditors, was that on the 24th day of July, 1893, they
sold their stock of merchandise to one McClure. The
sale of the stock of goods at that time to McClure is ad-
mitted, and we are thus brought to the consideration of
the only question in the case, namely: Does the evidence
sustain the finding of the district court that this sale to
McClure was not fraudulent; neither made nor accepted
by the parties thereto with intent to defraud or delay the
creditors of Klingman & Co.?

Section 20, chapter 32, Compiled Statutes, provides:
"The question of fraudulent intent in all cases arising
under the provisions of this chapter shall be deemed a
question of fact and not of law, and no conveyance or
charge shall be adjudged fraudulent as against creditors
or purchasers solely on the ground that it was not
founded on a valuable consideration." This statute made
the issue considered by the district court and the issue
presented here only one of fact, namely: What was the
motive, the intention, which actuated Klingman & Co.
and McClure in making the sale?

The evidence on behalf of the plow company tends to
show that at the time the sale was made by Klingman &
Co. to McClure the former were insolvent; that a check
of theirs given to the Moline Plow company had gone to
protest and that some of their notes had been dishonored;
that McClure had very little property subject to execu-
tion; that Klingman & Co. were doing business in Blue
Hill, in Webster county; that on Sunday night prior to
the sale, McClure, Klingman, and McNear met in the city

of Hastings; that the trade was there talked over; that a lawyer was consulted about the trade; that on Monday morning, at Blue Hill, McClure and Klingman made an invoice of the goods; that McClure then paid Klingman & Co. $200 in cash and executed his notes for the remainder of the purchase price of the stock, the total price agreed to be paid being about $4,000, the fair value of the goods; that no bill of sale of these goods was made by Klingman & Co. to McClure; that Klingman remained in the place of business of Klingman & Co. after the sale, the same as before it; that McClure expected and intended to pay Klingman & Co. the notes he had given them for the implement stock out of the proceeds of the sale of such implements, and that Klingman & Co. had turned over the notes received from McClure to a brother of one of the firm to put them beyond the reach of the firm's creditors.

The evidence on behalf of Klingman & Co. tended to show that McNear's interest in the business was about three times as much as that of Klingman; that McNear lived in the city of Blue Hill; that he was in the habit of spending his Sundays in the city of Hastings; that Klingman had the active management of the copartnership; that McNear was in the employment of a manufacturing company; that he was traveling for that company at a salary of $1,200 a year and expenses; that he had been so traveling for some years prior to the date of the sale to McClure; that in the spring of that year someone had reported to the manufacturing company that he, McNear, was neglecting its business and devoting too much of his attention to the copartnership affairs of Klingman & Co.; that the manufacturing company called McNear's attention to this; that McNear then talked to McClure about buying out Klingman & Co.; that on the Sunday preceding the sale McNear was stopping at Hastings as usual on Sundays; that McClure came to Hastings on that Sunday not knowing that either McNear or Klingman was there; that he was then and had been for some time in

the employment of a mowing or reaping-machine company, and traveling over the country setting up their machines; that the time of his employment with the machine company had about expired; that on this Sunday, after reaching Hastings, he met Klingman on the street; that afterwards he and Klingman and McNear met and the proposition to sell to McClure was again discussed; that they all went to a lawyer's office and counseled with him as to whether a bill of sale was necessary, and were advised that it was not; that on Monday morning Mc-Clure and Klingman returned to Blue Hill, invoiced the goods, McClure paid the $200 in cash, executed his notes for the remainder of the purchase money, and took possession of the stock; that Klingman & Co., at the time they made the sale, were not insolvent; that the check of $50 made to the plow company which had been protested was subsequently, before the bringing of the attachment suit, paid; that the assets of Klingman & Co., at a fair valuation, exceeded by several thousand dollars their total liabilities; that the real object and motive of the sale was that McNear might remain in the employ of the manufacturing company for whom he was working; that McClure was worth in the neighborhood of $3,000 at the time he purchased the stock; that he was well acquainted with the character of the business conducted by Klingman & Co., and that he possessed in the banks of Blue Hill an excellent credit; that the notes given by McClure to Klingman & Co. had never been indorsed or transferred; that they were produced on the taking of the evidence to discharge the attachment and were still owned by Klingman & Co. The evidence further shows, without contradiction, that only $275 of the debt for which the property was attached was due at the time of the attachment, and that this $275 was secured by bills receivable owned by Klingman & Co.; that Klingman after the sale remained in the old business house of Klingman & Co.; that he did so for the purpose of disposing of commission goods which the firm of Klingman

& Co. were carrying, and which were not included in the sale to McClure, and for the further purpose of collecting the book accounts and debts due to the firm of Klingman & Co.

Under this evidence we cannot say that the finding of the district court is not supported by sufficient evidence, nor that it is clearly against the weight of the evidence. In *Whipple v. Hill*, 36 Neb., 720, it was held that "where a motion to discharge an attachment on the ground that the facts stated in the affidavit are untrue is heard upon conflicting affidavits, the decision of the trial court on the motion will not be disturbed unless it is clearly against the weight of the evidence."

As already stated, the cardinal inquiry was: What was the motive, what was the intention, which actuated Klingman & Co. and McClure? If the court had found that their motive and their intentions were fraudulent, we think the evidence would have sustained the finding; but the district court, after looking at all the circumstances in evidence, has reached the conclusion that the motive and intentions of the parties were honest, and we cannot say that he is wrong. Counsel for the plow company insist, however, that, as the evidence shows the consideration for the sale was $200 in money, and the remainder of the purchase price was the notes of the purchaser, the court should therefore say the transaction was fraudulent; and counsel insist that *Beels v. Flynn,* 28 Neb., 575, supports their contention where a sale is made by a debtor of all his property for a part cash and the remainder in the promissory notes of the purchaser, that such transaction is conclusive evidence of a fraudulent intent. In the case cited a debtor had sold all his property to Beels in consideration of some cash and the promissory notes of Beels. Flynn, as sheriff, seized the property under attachment process and sold it, and Beels sued the sheriff for conversion. The sheriff justified the seizure by virtue of his attachment writs and defended on the ground that the sale to Beels

18

was fraudulently made by the debtor, with the intention on the part of the debtor and Beels to defraud the latter's creditors. The jury found on this issue for the sheriff and this court affirmed the judgment. The only issue presented to the jury was whether the sale made by the creditor to Beels was made in good faith. The jury found that it was not, and the only question presented to this court on proceedings in error was the sufficiency of the evidence to sustain the finding of the jury. It is said in the syllabus that Beels was not a *bona fide* purchaser and not entitled to protection. But this was no more than saying that the evidence sustained the finding of the jury that Beels was not a *bona fide* purchaser. Whether Beels was a *bona fide* purchaser or not was not a question of law, but of fact. The jury found that he was not a good faith purchaser and this court affirmed the judgment, and the opinion meant and means no more than that the evidence before the jury was sufficient to sustain its finding. It is doubtless true that the sale by one of all his property for some cash and the promissory notes of the purchaser, the seller at the time being in debt and the purchaser being a man of small means, is evidence of a fraudulent intent, but this court has never consciously held that such facts alone were conclusive evidence of fraud. To so hold would be to repeal the statute which has, wisely or unwisely, declared that intention to be a question for the determination of the jury or trial court, from all the facts and circumstances surrounding the transaction put in evidence in the particular case. The judgment of the district court is

AFFIRMED.