WILLIAM H. CRITES ET AL. V. LEVI C. HART ET AL.

FILED SEPTEMBER 16, 1896. No. 6648.

1. **Fraudulent Conveyances:** INSOLVENCY: PARTNERSHIP: TRUST FUNDS. The property of an insolvent, either person or partnership, is not a trust fund in the hands of the debtor in favor of creditors, in the true sense of the words "trust fund." The creditors do not, merely because of such relation to the debtor, have any recognizable or enforceable lien on the property of the debtor, nor is there any trust character attaching to it which interferes with a *bona fide* sale of it by the debtor.

2. ———: ———: ———: EVIDENCE. A firm, heavily indebted at the time, may sell a large portion of its property, its stock in trade, and also its business, and receive in consideration therefor the promissory notes of the purchaser, and these facts alone are not conclusive evidence that the sale was fraudulent. They are but facts to be considered in connection with all other facts and cir-

cumstances adduced in evidence on the trial on the question of the fraudulent or good-faith character of the transfer.

3. ———: EVIDENCE. The question of fraud in a transfer of property, as affecting the rights of the creditor of the vendor, is one of fact, to be determined in each case from the evidence introduced at the trial, and where a finding on such question is based on conflicting evidence it will not be disturbed, unless manifestly wrong.

ERROR from the district court of Merrick county. Tried below before SULLIVAN, J.

*W. T. Thompson,* for plaintiffs in error.

*John Patterson, contra.*

HARRISON, J.

The defendants in error in this court were plaintiffs in the district court, where the action was originally commenced, and will hereinafter be referred to as plaintiffs and the opposing parties as defendants. The suit is one on the official bond of William H. Crites, of defendants, as sheriff of Merrick county, to recover of him and his bondsmen a sum named in the pleading as the value of certain personal property which it was claimed belonged to the plaintiffs, and of which, it was alleged, there was a wrongful seizure and sale by the sheriff under and by virtue of executions issued by the county judge of said county, and placed in the hands of the sheriff for service, to enforce judgments rendered in that court against Edward P. Berryman, William Patterson, and Charles W. Rhodes, one in favor of the Studebaker Manufacturing Company, one belonging to I. L. Elwood & Co., and also one in favor of the United States Wind Engine & Pump Company. All claims asserted in the action arising from the completed service of the executions issued on the judgments in favor of the last two of the creditors just mentioned were either settled or abandoned before the time of the trial in the district court and did not further figure or appear in the controversy. The answer

contained a denial of any wrongful character of the seizure under the executions, also denied the plaintiffs' ownership of the property seized and sold, and alleged, in substance, that plaintiffs claimed such ownership under and by virtue of a pretended sale, evidenced by a bill of sale to them by Berryman, Patterson & Co., a firm composed of Edward P. Berryman, William Patterson, and Charles W. Rhodes, conducting a wholesale and retail hardware business in Central City, Nebraska, of the goods levied upon and sold by the sheriff, together with all the other goods then in stock in the business and the book accounts of the firm; that the firm of Berryman, Patterson & Co. was, at the time of such transfer to plaintiffs, insolvent and known by plaintiffs to be so; that the transfer from the firm to plaintiffs was made with the intent to hinder and delay its creditors in the collection of claims against it and to defraud its creditors, which purpose and intention was known to plaintiffs herein; that the consideration passing from plaintiffs to Berryman, Patterson & Co. in the transfer between them was in amount $30,000, which was not paid in cash, but their three notes were given and received, each for $10,000, one of which matured in one year after its date, one in two years, and one in three years after date. It was further pleaded that at the time of the sale by the firm to plaintiffs, the Studebaker Manufacturing Company creditor was a creditor of the firm of Berryman, Patterson & Co. There was also stated to be a relationship existing between each of the plaintiffs and a member or members of the firm of Berryman, Patterson & Co. In the reply filed the alleged relationship of the plaintiffs, respectively, to members of the firm of Berryman, Patterson & Co. was admitted, and all allegations of fraud or fraudulent intent as entering into the transaction of the sale of stock of hardware, etc., were denied. In a trial of the issues the jury returned a verdict favorable to the contentions of plaintiffs, and after defendants' motion for new trial was heard and overruled a judgment

was rendered on the verdict, hence the error proceedings on the part of the defendants.

It is claimed by counsel that certain facts were undisputed, among which are recited the following: That at the time of the transfer of the stock of goods, etc., to plaintiffs the Studebaker Manufacturing Company was a creditor of the firm making the transfer; that Levi C. Hart, one of the plaintiffs, was a brother-in-law of Charles W. Rhodes, a member of the firm of Berryman, Patterson & Co., and Anson L. Havens, the other plaintiff, bore a like relationship to Edward P. Berryman, another member of said firm; that Charles W. Rhodes, at the date of the transfer of the stock, was indebted to Hart in the sum of $4,000, and that Berryman, Patterson & Co. then owed Hart $9,500; that at the time of the sale Edward P. Berryman, at Hart's request, made a report, which was examined by Hart before the sale, of the assets and liabilities of the firm of which he, Berryman, was a member, which showed the aggregate amount of the indebtedness of the firm to be about thirty-one or thirty-two thousand dollars, and the assets consisted of the stock of goods, book accounts, bills receivable, etc., of the value of $30,000, and real estate of the value of $10,000 (this real estate was not sold or conveyed to plaintiffs); that of the consideration for the transfer of the stock, etc., in amount $30,000, no cash was paid, but three notes of $10,000 each were given, maturing in one, two, and three years from date; and it is asserted by counsel that, in view of the undisputed facts, the verdict and judgment ought not, and cannot, under the rules of law applicable and governing, be allowed to stand, but must be set aside, and states his further contention in this connection as follows:

"We maintain the law to be:

"1. That a debtor, while the owner of property, sustains two distinct relations in regard to it, viz., that of owner, and that of *quasi*-trustee for his creditors.

"2. That all persons who have notice that a proposed

vendor has creditors and is in failing financial circumstances, or is insolvent, are bound to take notice of such trust relation in their dealings with reference to the property of such vendor, and when the natural and probable effect of a sale of the property of the vendor under such circumstances might reasonably be understood to hinder, delay, or defraud the creditors of the vendors in the collection of their claims, such sale will be held to have been made in bad faith, and be null and void as to creditors. This proposition follows as a legal corollary to the first, and is substantially the rule as announced by this court in the case of *Beels v. Flynn*, 28 Neb., 575."

In relation to what is set forth under the heading "1," we will say that we do not understand that an individual or a partnership, the owner of property, even if insolvent, holds such property in trust for general creditors, in the true sense of the term, merely because the parties stand to each other in the relation of debtor and creditor. We understand it to mean no more, when used in such connection, than that the debtor will, in all his dealings with the property, be fair and honest, and will apply it, or its proceeds, in payment of any existing debts, in the manner and to the extent honesty and uprightness among men demand. The creditors do not, merely because they are creditors, have any lien, either legal or equitable, which is enforceable or recognized as such, or which interferes with the debtor's sale and disposal of property in any manner, provided it is not fraudulent or with intent to defraud creditors, or to hinder and delay them in the collection of their claims. The case of *Beels v. Flynn*, *supra*, the decision in which is relied upon as supporting the positions of counsel as stated in the quotations herein from his brief, is similar to the one at bar mainly in the fact that the payment of the consideration in the sale attacked in that case was almost entirely deferred and evidenced by the note of the purchaser, which, it was observed, might have the effect to hinder and delay creditors of the seller. The further fact was shown

in *Beels v. Flynn* that on the day succeeding the one of the sale the purchaser was informed by one or more of the creditors of the party from whom he bought that the creditors would probably try to reach and collect the amount due on the note, and he immediately went to the other party and traded him some land for the note.

In the opinion in the case of *Nebraska Moline Plow Co. v. Klingman*, 48 Neb., 204, it was held: "The fact that a copartnership, largely indebted, sells most of its property and its business to one of small means, in consideration of a small amount of cash and the purchaser's promissory notes, is a circumstance tending to show that the transaction was fraudulent, but not conclusive, nor, alone, sufficient evidence that it was fraudulent." It will be gathered from such of the main facts as are stated in what we have just quoted that the point raised for consideration and adjudication was like unto that presented in the case of *Beels v. Flynn*, and also in the case at bar. In the body of the opinion, written by RAGAN, C., it was said: "Counsel for the plow company insist, however, that as the evidence shows the consideration for the sale was $200 in money and the remainder of the purchase price was the notes of the purchaser, the court should therefore say the transaction was fraudulent; and counsel insist that *Beels v. Flynn*, 28 Neb., 575, supports their contention, where a sale is made by a debtor of all his property, for a part cash and the remainder in the promissory notes of the purchaser, such transaction is conclusive evidence of a fraudulent intent. In the case cited a debtor had sold all his property to Beels in consideration of some cash and the promissory notes of Beels. Flynn, as sheriff, seized the property under attachment process and sold it, and Beels sued the sheriff for conversion. The sheriff justified the seizure by virtue of his attachment writs, and defended on the ground that the sale to Beels was fraudulently made by the debtor, with the intention on the part of the debtor and Beels to defraud the latter's creditors. The jury found on this issue

for the sheriff, and this court affirmed the judgment. The only issue presented to the jury was whether the sale made by the creditor to Beels was made in good faith. The jury found that it was not, and the only question presented to this court on proceedings in error was the sufficiency of the evidence to sustain the finding of the jury. It is said in the syllabus that Beels is not a *bona fide* purchaser and not entitled to protection. But this was no more than saying that the evidence sustained the finding of the jury, that Beels was not a *bona fide* purchaser. Whether Beels was a *bona fide* purchaser or not was not a question of law, but of fact. The jury found that he was not a good-faith purchaser and this court affirmed the judgment, and the opinion meant and means no more than that the evidence before the jury was sufficient to sustain its finding. It is doubtless true that the sale by one of all his property for some cash and the promissory notes of the purchaser, the seller at the time being in debt and the purchaser being a man of small means, is evidence of a fraudulent intent; but this court has never consciously held that such facts alone were conclusive evidence of fraud. To so hold would be to repeal the statute which has, wisely or unwisely, declared that intention to be a question for the determination of the jury or trial court, from all the facts and circumstances surrounding the transaction put in evidence in the particular case." So, in the case at bar, no one of the undisputed facts was conclusive evidence of the alleged fraud in the sale of the stock of goods, etc., nor were they when grouped together; but they were evidential circumstances tending to prove the allegations of fraud, but to be considered in connection with all the facts and circumstances of which there was evidence adduced in the trial of the cause. The main questions to be determined by the jury were whether the alleged fraud or fraudulent intent had been shown to have been an element of the transfer of the stock of goods and other property, and to the knowledge of, or

participated in by, the parties thereto. "Whether or not a transfer of property is fraudulent as against the creditors of the vendor is a question of fact, determinable solely upon the evidence adduced in each case." (*Goldsmith v. Erickson*, 48 Neb., 48.) The evidence was conflicting. There were many facts and circumstances which tended to support the pleadings of fraud. On the other hand, there was much in the evidence which would induce a contrary belief. We have carefully perused and considered all the evidence, and it need not be quoted from or summarized here. ·Doubtless there was sufficient in it to have sustained a finding and verdict contrary to the one returned, but there was also sufficient to warrant the finding and verdict made, hence it will not be disturbed. The judgment of the district court must be

AFFIRMED.