CHAMBERLAIN BANKING HOUSE v. TURNER-FRAZER MER-
CANTILE COMPANY.

FILED OCTOBER 22, 1902. No. 12,119.

Commissioner's opinion, Department No. 1.

1. **Allegata Petitionis.** Allegations of petition *held* to sufficiently show that plaintiff's judgment is based upon indebtedness contracted before the transfers of the property complained of.

2. **Petition: FACTS.** Petition *held* to set out facts sufficient, if true, to avoid the conveyance in question, for fraud.

3. **Creditor's Remedy.** *Held*, that a creditor will not be required to exhaust the statutory proceedings in aid of execution before

resorting to equity, to charge another creditor for chattel property fraudulently obtained and disposed of by the latter.

4. **Mortgage Void as to Creditors.** A mortgage on $4,200 worth of merchandise, given to secure $2,181.23, to which is added $500 then advanced by the mortgagee to the debtor on the latter's plea that he is entitled to $500 exemptions, where the mortgagee is chargeable with notice that the debtor has other obligations whose payment he is seeking to avoid, and no other estate available, is fraudulent and void as to creditors whose claims antedate the mortgage, and who have no part in its making.

Error from the district court for Johnson county. Tried below before Stubbs, J.  *Affirmed.*

*M. B. C. True,* for plaintiff in error.

*Hugh La Master* and *Culver & Phillip, contra.*

Day, C.

The Turner-Frazer Mercantile Company brought this suit in the district court for Johnson county against the Chamberlain Banking House to subject to the payment of plaintiff's judgment against Renshaw & Co. certain funds arising from the sale of a stock of goods and fixtures which was made by the defendant bank under an alleged fraudulent chattel mortgage executed to it by Renshaw & Co.  Similar suits were instituted by Noyes, Norman & Co., and eight other creditors of Renshaw & Co., each claiming a prior lien upon the funds arising out of the sale.  For the purposes of trial and decree, the several cases were consolidated.  A trial was had to the court, resulting in a judgment in favor of the several plaintiffs; the decree fixing the amount due each, and further ordering that the defendant pay into court the sum of $2,681.23, with interest at seven per cent. from November 6, 1895; that said sum be distributed *pro rata* among the several plaintiffs.  To review this judgment the defendant has brought the case to this court on error.

It appears from the testimony that on November 6, 1895, and for some months prior thereto, F. D. Renshaw, under the name and style of Renshaw & Co., was the

10

owner of a general stock of merchandise and fixtures, and was carrying on a general store in the town of Crab Orchard, Nebraska. Upon that date he was indebted to the Chamberlain Banking Company in the sum of $1,079.15. He was also indebted to Charles M. Chamberlain, who was the cashier and manager of the defendant bank, upon five promissory notes, aggregating $582.85, and was further indebted to said Chamberlain in the sum of $519.23, by reason of a liability as indorser upon a number of notes which had previously been discounted by the said Chamberlain. It also appears that Renshaw was owing a number of wholesale houses for goods purchased, his debts being largely in excess of his assets. It appears that on November 6, 1895, the defendant and said Chamberlain demanded payment or security of their respective claims, and during the negotiation, which lasted through the day, threatened to attach the stock unless security for their claims was furnished. Renshaw insisted that if his goods were seized or attached he would claim out of them the exemptions to which he was entitled under the law. It was finally agreed between the parties that defendant would advance to Renshaw an additional $500, which was accordingly done, and Renshaw thereupon executed and delivered to the defendant a demand note for $2,681.23, the exact amount of defendant's and Chamberlain's claims, together with the $500 advanced by the bank; and to secure the payment of this note executed and delivered to the defendant a mortgage upon his entire stock of goods and store fixtures. The defendant and Chamberlain surrendered to Renshaw the notes each held against him, and Chamberlain also surrendered the notes upon which Renshaw was indorser. By a subsequent arrangement between the bank and Chamberlain, the bank paid to Chamberlain the amount of his claim against Renshaw. The note and mortgage were executed in the evening, and the following day the defendant demanded payment of its note, and in default thereof took possession of the stock under the mortgage. It also appears that at the time of

the execution of the mortgage to the defendant, Renshaw gave a mortgage to the Symns Grocery Company, subject to the mortgage in favor of the defendant, and on the following day executed other chattel mortgages to a number of creditors, all subject to the lien of the two mortgages above described. The value of the stock was shown to be about $4,100, and brought at the mortgage sale, after deducting the expenses thereof, $3,184. No question is raised in this action as to the validity of the mortgages made subject to the first mortgage.

One of the errors now complained of is the overruling of defendant's demurrer to the amended petition. In support of this demurrer three propositions are advanced: (1.) That there is no sufficient allegation that Renshaw & Co. was indebted to the plaintiff at the time of the execution of the mortgage. The amended petition charged in apt language that in December, 1895, the plaintiff recovered a judgment against Renshaw & Co. for $353.75, which was in full force and unsatisfied, and that the said judgment was for goods, wares and merchandise sold and delivered by the plaintiff on credit, September, 1895. We think this was a sufficient allegation that the debt was created before the execution of the mortgage. (2.) That the facts alleged were not sufficient to constitute a fraud, and the statement in terms that the transaction was fraudulent is a mere conclusion. This objection is not good for the reason that the petition alleges that a fictitious indebtedness was included in defendant's mortgage with the intent to defraud Renshaw's creditors. It is also alleged that $500 in money was paid by the bank to Renshaw at the time of taking the mortgage, and was included in it with the intent by both parties to place such sums beyond the reach of Renshaw's creditors, and to hinder and delay the latter in the collection of their claims. (3.) That the petition does not show that plaintiff has exhausted its legal remedies. The basis of this claim seems to consist in the fact that the petition only alleges execution from the county court and the re-

turn of *nulla bona*. The petition, however, alleges that the goods taken under the assailed mortgage constituted all the property and were the sole means of Renshaw for the payment of his debts. It also alleges that the property had been sold and disposed of by the banking house before the commencement of this action. There was, therefore, when the suit was begun, nothing to attach or levy upon. And (4) plaintiff's only legal remedy was by proceedings in aid of execution. The right to take proceedings in aid of execution under the statute is merely cumulative, and does not prevent a resort to equity. *Monroe v. Reid*, 46 Nebr., 316. The demurrer seems, therefore, to have been rightly overruled.

The principal question raised, and the one strenuously argued, is that the evidence does not support the finding of fact made by the trial court as to fraud in the mortgage. The finding is as follows: "The court further finds that on the 6th day of November, 1895, the defendants Chamberlain Banking House and Chas. M. Chamberlain knew or were possessed of sufficient information from which they should have known that F. D. Renshaw & Co. were in failing circumstances and that the taking of the chattel mortgage by them in the manner heretofore described would have the effect to hinder and delay the other creditors of the said F. D. Renshaw & Co., and that the payment by the Chamberlain Banking House to the said F. D. Renshaw & Co., the sum of $500, at the time of making of said chattel mortgage, and of the additional sum aggregating the amount due from F. D. Renshaw & Co. to Chas. M. Chamberlain, was in fraud of the other creditors of the said F. D. Renshaw & Co., and rendered the chattel mortgage and the lien attempted to be secured thereby null and void." It might be added that there is a claim put up that the facts found here are not sufficient to avoid the mortgage. The latter contention, however, is not strongly urged and can hardly be sustained. If at the taking of this mortgage, $500 in money was advanced by the mortgagee, and included in the

amount secured, for the purpose and with the intention by both parties to place that sum beyond the reach of the creditors of the mortgagor, no court could uphold the instrument. Does the evidence disclose such an intent? The payment of the $500 is conceded. The defendant's evidence shows that the banking house was threatening an attachment. It shows that the indebtedness claimed by the banking house and Chamberlain against Renshaw at that time was $2,181.23; this included $519.59 of contingent liability of Renshaw upon indorsed notes. These notes were then past due, according to Chamberlain's testimony. It does not appear that notice of their dishonor had been either given or waived. Defendant claims that the notes were worthless. Probably the moral obligation to redeem his indorsement would uphold the securing of their amount if this were the only objection to the mortgage. They were, however, with interest, included in the mortgage, and the notes themselves were returned to Renshaw. Renshaw's stock of goods at that time, as invoiced by Chamberlain's employees, amounted to $4,200. It appears that Chamberlain Bros., in which firm this C. M. Chamberlain was a member, had at that time in its hands a claim for Symns Grocery Co., which was secured by a subsequent mortgage on the same day, for $421.71. It appears that Renshaw's account with the bank was overdrawn $260, which was included in the mortgage. This overdraft had been running in various amounts since the preceding July. It seems to have been occasioned by checks heavier than Renshaw's deposits, drawn from time to time in favor of the various creditors represented here, together with the Symns Grocery Co. It appears that when Renshaw was threatened with attachment against this stock, on account of this indebtedness, he refused to give any security until he should have received the $500 which was paid to him. Chamberlain's testimony is that he declared he had no real estate, and was entitled to $500 in exemptions, and would give no mortgage until he got the $500, as he would have no ex-

emptions against a mortgage. Chamberlain says that he had no knowledge of any indebtedness of Renshaw's outside of that secured by the bank's mortgage and that of the Symns Grocery Co. The anxiety of Renshaw to provide for his exemptions must have indicated clearly enough, in connection with the other facts within Mr. Chamberlain's knowledge, that there were other creditors of whom Renshaw was afraid. If there were no other debts than the banking house's and the grocery company's debts, there would be an equity of nearly $1,600 coming to Renshaw from the stock. It would seem that Chamberlain must have understood, when Renshaw told him that he must have this $500 in lieu of his exemptions, that he was getting it in order to hold it from his creditors. Had he a right to do so, and the banking company a right to give it to him for that purpose?

It is well established that a debtor in failing circumstances may prefer one of his creditors, even though the effect is to use up all his property and prevent a satisfaction of other claims against him. *Costello v. Chamberlain,* 36 Nebr., 45; *Davis v. Scott,* 22 Nebr., 154; *Hershiser v. Higman,** 31 Nebr., 531; *Brown v. Williams,* 34 Nebr., 376; *Hamilton v. Isaacs,* 34 Nebr., 709; *Sunday Creek Coal Co. v. Burnham,* 52 Nebr., 364, 368; *Lininger v. Raymond,* 12 Nebr., 19. But in all such cases there has been nothing done by the secured creditor, beyond providing for his own repayment, which in any way tended to assist the debtor in evading his other obligations.

In *Switz v. Bruce,* 16 Nebr., 463, the creditor, knowing her debtor had other obligations, took conveyance of all his property and paid him $450. She believed the other obligation was unjust or had been paid, but it was held her action necessarily assisted the defeating of the other claim, and she was chargeable with knowledge of such fact, and with an intention to assist in such result. The court says (p. 466) : "She had the lawful right to beat him [the other creditor] to the extent of getting her own pay;

*28 Am. St. Rep., 527.

and had she stopped there, her position would have been unassailable.   But unfortunately for her, she did not, but proceeded to assist her co-defendant to convert all of his property to the exclusion of the plaintiff."

The recent case of *Henney Buggy Co. v. Ashenfelter,* 60 Nebr., 1, affirmed the same doctrine.   The buggy company, to secure a debt of $1,800, took its debtor's entire stock, and paid him $300 in money.   This was held to necessarily result in assisting the debtor in keeping that much property from his other creditors, and as the evidence showed that such a purpose on the debtor's part was known to the buggy company, the conveyance left the property subject to attachment by the other creditors.

The fact that in the case at bar the debtor was entitled to exemptions would not seem to affect the case.   It is evident enough that Renshaw is in a much better condition to avoid payment of creditors by having $500 in cash than merely having a right to have appraised and set off to him $500 worth of goods.   It is impossible to see what there was to prevent him from claiming exemptions out of any equity which might be left after the satisfaction of the banking house and Symns Grocery Company's mortgages.   We do not think that it is competent for a creditor to present this kind of inducement for a preference that completely shuts out other meritorious claims.

We therefore recommend that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.