WALTER W. HACKNEY, AS TRUSTEE IN BANKRUPTCY OF THE ESTATE OF JULIUS M. ERLENBORN, v. FIRST NATIONAL BANK OF LINCOLN, NEBRASKA, ET.AL.*

FILED APRIL 22, 1903. No. 12,794.

1. **Trustee in Bankruptcy:** ACTION TO RECOVER PROMISSORY NOTE. An action by a trustee in bankruptcy to recover a negotiable promissory note from one to whom it had been transferred by the bankrupt's wife pending bankruptcy proceedings, must develop either fraud or an intended preference to entitle plaintiff to recover.

2. **Evidence:** Evidence in this case *held* to support the trial court's finding that neither of the above grounds of recovery are shown in this case.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, DISTRICT JUDGE. *Affirmed.*

*John S. Bishop, Robert S. Mockett* and *Orpheus B. Polk,* for plaintiff in error.

*Andrew J. Sawyer* and *N. Z. Snell, contra.*

* Rehearing allowed. See opinion, p. 594, *post.*

HASTINGS, C.

This is a suit in equity to avoid the transfer of a note for $290 given by the defendant Kettering to Julius M. Erlenborn, payable in two years, without interest. This note Kettering gave to Erlenborn in part payment for a stock of groceries and a set of store fixtures purchased in January, 1900. The petition alleges that prior to January 15, Erlenborn was in business as a retail grocer in the city of Lincoln, and was then and had been for some time insolvent, as the defendants well knew; that Erlenborn then had the grocery stock, of the value of $1,000, together with the furniture in the store, and three horses and two wagons, of the value of $800, and book accounts of the value of $500, but was indebted to divers persons in the sum of $3,500 and more; that the First National Bank of Lincoln held his note for $100, payable February 22, with interest from maturity; that he owed Hargreaves Bros. $919.60, Raymond Bros. Clarke Company $278.12, and Rudge & Morris Company $25.81—all three on book accounts; that for the purpose of evading the bankruptcy act, and defrauding his creditors, he sold the grocery stock, furniture and fixtures to Kettering, and in consideration of such purchase Kettering assumed the indebtedness to Hargreaves Bros., Raymond Bros. Clarke Company and Rudge & Morris Company, to the extent of $900, which the three creditors agreed to accept in full, and gave in addition this note for $290, payable in two years, without interest, as above stated. It is further alleged that about March 1, creditors of Erlenborn filed a petition in bankruptcy, under which, on May 10, 1900, Erlenborn was adjudged a bankrupt; that plaintiff was appointed as trustee in bankruptcy June 7, 1900, and duly qualified and has ever since acted as such; that the Rudge & Morris Company paid to the plaintiff the amount they received on their indebtedness due from Erlenborn; that the defendant bank, to avoid the provisions of the bankruptcy law and defraud Erlenborn's creditors, obtained possession of the

$290 note, and concealed and refused to surrender it, and refused to give the plaintiff trustee any information in regard to it. It is charged that the bank held the note simply as collateral security for the payment of its claim, and in violation of the bankruptcy law, and obtained it subsequently to the institution of the bankruptcy proceedings. A demand upon the bank for the note is alleged, and its refusal, and that the bank was threatening to and about to transfer the note in fraud of plaintiff's rights. Plaintiff asks that the note be declared to be the property of the bankrupt's estate, and be delivered to him, or that the bank pay in its value, in the sum of $290, and for general relief.

The answer of the defendant bank admits its incorporation, the indebtedness alleged, the ownership of the property on January 15 by Erlenborn but not its value, the sale by Erlenborn to Kettering and the receipt in part payment on this sale of the $290 note, and denies the remainder of plaintiff's allegations. The bank also alleges that Erlenborn was indebted to his wife, Lizzie Erlenborn, for money borrowed from her at different times, to the amount of $290 and more; that sometime in February, in payment or as security for such indebtedness, he indorsed and delivered to her the note in question, and on April 10, the bank purchased this note from her, paying $137.33 in cash, and her husband's note of $100, on which there was then acrued $1.28 interest. The bank also says that it bought the note in good faith and in the usual course of business, without notice of the facts stated in plaintiff's petition, and gave for it $137.33 in cash, and the $100 note of Julius M. Erlenborn; that the note was duly indorsed to the bank by Lizzie Erlenborn, who then was its owner, and that the note then bore the indorsement of Julius M. Erlenborn, and was a negotiable promissory note, and was purchased by the bank without knowledge of any defenses thereto. It is also alleged that Julius M. Erlenborn was a married man and the head of a family; that neither he nor his wife owned any real estate whatever;

that after the sale to Kettering, Erlenborn had no property other than the said note, of the face value of $290, and the actual value of less than $250, and certain book accounts, of less value than $250; that prior to April 10, 1900, Erlenborn had collected and used in support of his family a portion of these accounts, so that the remaining part was of no value whatever; that the note was exempt property, and its transfer in no way fraudulent as to his creditors, or as to the plaintiff trustee. The answer was demurred to as to all but the general denial in the first paragraph, and the demurrer overruled, and a general denial filed by way of reply.

The court made a general finding in favor of the defendants and dismissed the action. A motion for new trial was filed on the ground that the judgment was contrary to law, contrary to the evidence, error in overruling the demurrer to the answer and errors of law occurring at the trial. This motion was overruled, and the plaintiff now complains of error in the judgment upon the same grounds, which are, practically, that the evidence does not sustain the finding and judgment of the court, and that there was error in overruling the demurrers to the several defenses. The latter ground of error is no longer urged, and the present contention of plaintiff is that, under the evidence, he was entitled to have the $290 note or its face value.

The evidence disclosed the institution of bankruptcy proceedings in March, 1900, against Julius M. Erlenborn, and that on May 10, he was adjudged a bankrupt, and the appointment of plaintiff as trustee. In his list of creditors filed in the bankruptcy proceedings April 25, 1900, he makes no mention of any indebtedness either to his wife or to the First National Bank. Attached to his schedule of property is a claim of exemptions in the sum of $500 and the $290 note is not included. Edward Camack testified that he was an attorney at law, residing at Lincoln, January, February and March of 1900; that in February, 1900, he called on Harry Freeman, cashier of the defendant bank, and told the latter that he desired to get enough claims

together against Erlenborn to force him into bankruptcy, and asked the cashier if the bank had any claim against him. He was answered that they had a claim, but did not wish to join in such a petition. Mr. John S. Bishop testified to a conversation with the cashier in February, 1900, in which the latter stated that the bank held a note for $100, not yet due. When asked if the bank would join in the petition in bankruptcy, they said, no, it might be paid at maturity. The witness had another talk with the cashier after the note matured, and the cashier again declined to join in the bankruptcy proceedings, on the ground that the preferred creditors, Hargreaves Bros. and Raymond Bros. Clarke Company were customers of the bank; that before the filing of the petition in the present case he asked Mr. Freeman if the bank had the $290 note; the cashier replied "No," but when the witness told the cashier he had information that the note was in the bank, the cashier admitted that it might be true, and finally went and got the note, but refused to surrender it, and advised witness to see the president, Mr. Burnham; Mr. Burnham, also, refused to give up the note, and referred the witness to the bank's attorneys. The latter, also, refused to surrender it.

Mr. Erlenborn testified to the sale of the stock and what he got for it, viz., the assumption of the accounts due Hargreaves, Raymond Bros. Clarke Company and Rudge & Morris and the $290 note; that he retained outstanding accounts of the aggregate amount of about $800; that he indorsed the $290 note and delivered it to his wife, in consideration of money he had borrowed from her. He testified from his ledger as to money received from his wife to the amount of $195. He also testified to $28 paid by her for a stove, and one other advancement of $50 in addition; that the indorsement of the note to her was made early in March, when he himself was going south. He testified that by this time his accounts were more than half collected and exhausted; that what were left were of little or no value.

The president of the bank testified that the note, on April 10, was brought in by Erlenborn's brother, who asked if the bank would buy the note, and was told that the bank would buy the note if Erlenborn's note for $100 was taken in part payment, and if discount, for the time which the note was to run without interest, was deducted; that the proposition was accepted; that the note bore Erlenborn's indorsement, and was indorsed by Mrs. Erlenborn. Mrs. Erlenborn testified that she had loaned money to her husband, but she did not know how much; that some little had been repaid to her, but she did not know how much. She also said on cross-examination that she supposed this money was a gift. Most of it was claimed to have been gotten before her marriage to Erlenborn, which seems to have been in 1899.

It is clear that a recovery in this case must be based either on fraud in the obtaining of this note on the part of the bank, or else upon the proposition that the obtaining of it, no matter how, was a preference, and that the bank accepted it, having reasonable cause to believe that it was intended as a preference. The note itself was a negotiable one, indorsed by the payee, and in the hands of a third party. It was purchased by the bank with $137.33 in cash, and the surrender of Erlenborn's obligation which the bank held. That Erlenborn himself had transferred this note, or arranged for its transfer, with any intention to prefer the bank, there is nothing to indicate. Mrs. Erlenborn had just been confined, and her disposition of the paper is easily accounted for. That, under the circumstances, and as a last resort, she should be willing to take up her husband's obligation in order to get this $137.33, is not surprising. It seems impossible, therefore, to allow plaintiff to recover on the ground of an intended preference.

It seems equally impossible to allow a recovery on the ground of fraud. No evidence is tendered to show any purpose to defraud on the part of the bank, and it seems clear that its purpose was to buy paper and use Erlen-

42

born's obligation to get it if it could. It does not appear that plaintiff could have secured this note in any event.

It is clear that at the time it was transferred to the wife, all the remaining property of Erlenborn, including the $290 note, would not amount to the $500 covered by his exemptions.

In the case of *Chamberlain Banking House v. Turner-Frazer Mercantile Co.*, 66 Neb. 48, it was held that the advancing of $500 in cash in consideration of obtaining a mortgage to secure defendant's new indebtedness by a corporate creditor, who had notice of other outstanding debts of the mortgagor, which would be left unsatisfied, rendered the mortgage fraudulent; that while a party was entitled to hold $500 of property exempt, to give him $500 cash in his pocket would leave him at liberty to claim another $500 of exemptions, and would materially assist him to defeat his creditors.

In this case, however, it is impossible to see how the taking of this note by the bank could have in any manner assisted Erlenborn to deplete the funds available to the trustee, as there was not property enough left, including the note, to cover the amount of the debtor's exemptions.

It is recommended that the judgment of the district court be affirmed.

Kirkpatrick and Lobingier, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed February 4, 1904. *Judgment of affirmance adhered to:*

1. **Bankrupt:** Bona fide Purchaser from Preferred Creditor. Where one creditor of a bankrupt has secured a preference in the payment of his claim, the trustee may recover the property, or its value, from such preferred creditor, but he can not pursue the property into the hands of a third party, who is a *bona fide* purchaser, or recover from such third party the value of the property.

2. ——: ——. Assuming that property was fraudulently conveyed by a husband to his wife, the same can not be recovered from a *bona fide* vendee of the wife.

DUFFIE, C.

This case grows out of a bankruptcy proceeding instituted against Julius M. Erlenborn, and the facts are fully stated in the opinion heretofore filed by Mr. Commissioner HASTINGS, and are briefly as follows: Erlenborn, within four months previous to the filing of a petition to have him declared a bankrupt, assigned to his wife a note for $290, taken by him on a sale of his grocery stock and fixtures, in payment, as he claims, of money borrowed from her prior to their marriage. At this time Erlenborn was owing the First National Bank of Lincoln $100, evidenced by his note for that amount. Mrs. Erlenborn, desiring to raise some money during her husband's absence from home, requested the bank to purchase the $290 note received from her husband. The bank agreed to make such purchase provided she would accept as part payment her husband's note for $100, held by the bank. She consented to this arrangement and transferred the note to the bank, receiving her husband's note for $100 and the balance in cash. The case was argued and submitted upon the theory that by the purchase of the $290 note from Mrs. Erlenborn the bank obtained payment in full of its claim against Julius M. Erlenborn, and thus secured a preference over the other creditors of the bankrupt, and that the transaction was fraudulent.

Subdivision *b*, of section 60 of the bankruptcy act, is as follows: "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

This statute defines the rights of a trustee in bankruptcy in avoiding a transaction by which one creditor of the bankrupt obtains a preference over other creditors. He may, in the words of the statute, "recover the property or its value from such person"; that is, from the preferred creditor. The act does not allow the trustee to follow the property or the value of the property by which the preference was secured, into the hands of third persons. The secured creditor, in our view, may use money or property coming from the bankrupt to him as he would any other money or property, even though its receipt by him constitutes a preference within the meaning of the bankrupt act. The property received is liable to be taken in his hands, or, if disposed of, its value may be recovered. But the trustee can not reach third parties to whom the money may have been paid or the property transferred, the act giving him an action against the preferred creditor alone. If Mrs. Erlenborn was a preferred creditor of her husband, the plaintiff should have proceeded against her and not against the bank, her assignee of the note. There is no authority, as we understand the bankruptcy law, for pursuing the assignee to recover property received from a preferred creditor. We have been unable to find any cases where this question was raised and decided, but Collier, in the fifth edition of his work on Bankruptcy, page 461, makes the inquiry, against whom shall the action be brought? and, in answer to the question, says: "Here the words of the statute are clear: 'The person recovering it or to be benefited thereby.'" Again, at page 462 it is said: "Suits to recover the property in specie should only be brought where it can be identified and is found in the hands of the person preferred." It seems clear to us that if the specific property can be recovered only when found in the hands of the person preferred, suit for its value can only be maintained against the same person. Neither can the action be maintained upon the theory that the assignment of the note by Erlenborn to his wife was fraudulent as against creditors. While the rule is well established that

property transferred by a debtor in fraud of the rights of his creditor may be recovered in the hands of any one having notice of the fraud, and while the transfer of this note might well be held to be fraudulent as between Mr. and Mrs. Erlenborn, there is no evidence whatever in the record to charge the bank or any of its officers with notice of such fraud. No attempt in this direction was made, and, so far as the evidence discloses, the bank was a good-faith purchaser of the note prior to its maturity, without any knowledge or notice of any fraud in the assignment from Erlenborn to his wife.

We recommend that the former opinion be adhered to.

KIRKPATRICK and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion in this case is adhered to.

FORMER JUDGMENT ADHERED TO.